■ BOARD OF EDUCATION OF FARMINGDALE UNION FREE SCHOOL DISTRICT, Respondent, v. FARMINGDALE CLASSROOM TEACHERS ASSOCIATION, INC., LOCAL 1889, AFT AFL-CIO, et al., Appellants.— In an action to recover damages for alleged abuse of process and prima facie tort, defendants appeal from an order of the Supreme Court, Nassau County, dated January 30, 1974, which denied their motion to dismiss the complaint. Order affirmed, without costs. Since the motion was addressed to the complaint as a whole, and the first two causes of action are valid pleadings, the motion was properly denied in its entirety even though the third cause of action was legally insufficient (*De Maria* v. *Josephs*, 41 A D 2d 655; *Griefer* v. *Newman*, 22 A D 2d 696). "Where specific acts, recognized as tortious in the law, are asserted, the remedies lie only in the classic categories of tort" (*Ruza* v. *Ruza*, 286 App. Div. 767, 769; *Metromedia, Inc.* v. *Mandel*, 21 A D 2d 219). The third cause of action, which is based on an alleged prima facie tort, is insufficient because the basic allegations therein are the grounds for a cause of action in traditional tort. This

is particularly so since plaintiff's first cause of action is actually based solely on the traditional tort of abuse of process. The two elements of abuse of process are, as stated in New York Jurisprudence (vol. 1, Abuse of Process, § 3, p. 57): 1. The existence of an ulterior purpose; and 2. An act in the use of process not proper in the regular prosecution of the proceeding. In *Hauser* v. *Bartow* (273 N. Y. 370, 373) the Court of Appeals defined the tort as follows: " ' The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough' " (citing *Dean* v. *Kochendorfer*, 237 N. Y. 384, 390). The facts as accurately recited in the dissenting memorandum, indicate the issuance of 87 separate subpoenas, all returnable at the same time and place, despite the request of plaintiff's attorney to stagger the returns so as not to disrupt the orderly operation of the plaintiff's schools. In *Dishaw* v. *Wadleigh* (15 App. Div. 205) the defendant, an attorney, had caused a summons and a subpoena to be served in a prior action, against plaintiff as the defendant therein, upon a small alleged debt, but returnable at a court remote from the home of the alleged debtor, instead of a nearer place where it ordinarily would be made returnable, in a transparent attempt to coerce him into paying the claim rather than submit to the inconvenience and expense of attending the court where the venue was thus lid. In reversing the judgment against defendant and granting a new trial upon the ground that improper evidence had been introduced at the trial, the Third Department stated with reference to the subject of abuse of process (p. 211): " A subpoena is for the purpose of compelling the attendance of a person whom it is desired to use as a witness; its use for any other purpose is a perversion and abuse of the process of the court". At bar, the defendant Association's attorney compelled the attendance of 87 teachers, all of whom (as members of the defendant Association) were quite willing to attend. The result was that plaintiff's teaching staff was so severely crippled in numbers as to require the hiring of some 77 substitutes as temporary replacements, at a considerable cost to plaintiff. By this not too subtle form of coercion defendants put plaintiff on notice that they were willing to pervert the uses of the law to plaintiff's detriment. Thus, giving every fair intendment to the complaint, we think a cause of action (the first cause, for compensatory damage), is stated for abuse of process. The second cause of action, for punitive damages for the same abuse of process, is sufficient and must stand or fall with the first cause of action. Gulotta, P. J., Hopkins, Cohalan and Munder, JJ., concur; Shapiro, J., dissents and votes to reverse and grant the motion to dismiss the complaint, with the following memorandum: The complaint attempts to set forth three causes of action. The first seeks compensatory damages for abuse of process, the second seeks punitive damages for the tort alleged in the first and the third alleges that the same facts alleged in the first cause of action constitute a prima facie tort. In my opinion none of them states a cause of action. In substance, the allegations of the complaint, as amplified by the undisputed allegations and charge of the Public Employment Relations Board (PERB) (see CPLR 3211, subd. [c]) are as follows: On March 28 and 29, 1972, 87 members of the defendant Farmingdale Classroom Teachers Association, Inc. (the Association), all employees of plaintiff the Board of Education of Farmingdale Union Free School District (the Board), were absent from their classes. Thereafter, in June, 1972, the PERB charged that the defendant Association had called a strike in violation of section 210 of the Civil Service Law and that by reason thereof its members had " absented themselves from their duties without authorization". The Board was not a

party to the PERB proceeding. Hearings on the charge were scheduled for October 5, 6, 10 and 11. Defendant Kaufman, the attorney for the Association, on or before October 2 issued and served subpoenas on 87 teachers employed by the Board. The subpoenas were all returnable on October 5. The Board learned of this on or about October 3, when the subpoenaed employees informed their building principals of their need to be absent on October 5 in order to comply with the subpoenas, The Board's oral request to the Association's counsel to excuse the majority of the subpoenaed teachers on October 5 was refused. As a result the Board was compelled to engage 77 substitute teachers and to pay them $2,695 for their services in addition to having to pay the absent teachers $6,565 since the latter's absence was an approved absence under the Association's contract with the Board. This, the Board alleged in its first cause of action, was "effected with full knowledge that the attendance of eighty-seven (87) teachers a's witnesses for the charged party would not and could not reasonably be required by defendants on the initial hearing date of October 5, 1972" and was done "wrongfully and maliciously and with intent to injure and harass plaintiff," thus constituting abuse of process. The second cause of action is for punitive damages for the wrong alleged in the first cause because defendants "seriously inconvenienced" the Board and "disrupted" the "educational process within the school district" on October 5. The third cause of action realleges the facts stated in the first cause and states that, since the "primary" purpose of defendants' conduct in subpoenaing the 87 teachers and requiring their presence at the PERB hearing "was to insure the payment of the affected teachers for that day by plaintiff and for the further ulterior purpose of compelling plaintiff to engage the services of qualified substitutes to conduct classes at additional expense to the school district", defendants' action constituted a prima facie tort. The law on what constitutes the tort of abuse of process is clear. In the leading New York case on the question, *Hauser* v. *Bartow* (273 N. Y. 370, 373–374), Judge Hubbs described the action as follows: "'The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough.' (*Dean* v. *Kochendorfer*, 237 N. Y. 384, 390). 'The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather "abuse," of process in connection therewith — as the Pennsylvania court has aptly put it, for a perversion of legal process. The process of law must be used improperly and this means something more than a proper use from a bad motive. * * * If the process is employed from a bad or ulterior motive, the gist of the wrong is to be found in the uses which the party procuring the process to issue attempts to put it. If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated. * * * The tortious character of the defendant's conduct consists of his attempt to employ a legitimate process for a legitimate purpose in an improper manner, and this point must be clearly shown by the plaintiff to entitle him to maintain his action.' (Harper on The Law of Torts, § 272, pp. 593–595.) It is not enough that the actor have an ulterior motive in using the process of the court. It must further appear that he did something in the use of the process outside of the purpose for which it was intended. (Cf. note, 27 Harvard Law Review, p. 594.)

Everyone has a right to use the machinery of the law, and bad motive does not defeat that right. There must be a further act done outside the use of the process — a perversion of the process. If he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process. He may be liable for malicious prosecution, but the distinction between these two wrongs must be kept in mind. As soon as the actor uses the process of the court, not to effect its proper function, but to accomplish *through it* some collateral object, he commits this tort. A concrete example may make this more intelligible. If one resorts to legal process to have another declared incompetent, and uses it for that purpose, he does not commit the wrong, though he may be guilty of another wrong, no matter what his motives, hopes or expectations may be. But if he makes use of that process, not for the purpose of attaining its proper end, but to extort money, or to coerce action, that is a perversion of process." That *Hauser* is still the law in this State is made clear in *Williams* v. *Williams* (23 N Y 2d 592, 596), where the court said: "' The gist of the action for abuse of process lies in the improper use of process after it is issued.' (*Dean* v. *Kochendorfer*, 237 N. Y. 384, 390; *Hanser* v. *Bartow*, 273 N. Y. 370.) Process is a ' direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act.' (*Matter of Smith*, 175 Misc 688, 692–693.) It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." Here there is no claim or allegation in the first cause of action for abuse of process that defendants, by subpoenaing their witnesses as they did in their defense of the PERB proceeding, used the subpoena process for any purpose other than "the immediate purpose for which it was intended." It is nowhere alleged that the witnesses subpoenaed, the 87 teachers employed by plaintiff, were not all proper and necessary witnesses for the defendant Association in the PERB proceeding. Rather, the Board's complaint of abuse of process is only that defendants refused to accommodate their scheduling the appearance of these witnesses to meet the convenience of the Board; nor is there any allegation that defendants were in a position to grant the requested accommodation without themselves suffering some detriment in their defense of the PERB charge. Defendants' ability to grant the requested accommodation would clearly depend, to some extent, upon prior agreement with counsel for the PERB who was presenting the matter to the PERB as to any continuance dates. There is no allegation that defendants " did something in the use of the process outside of the purpose for which it was intended," but only that the refusal of defendants' counsel to co-operate with plaintiff in scheduling the appearance of his witnesses to suit their employer's convenience was done out of an improper motive "wrongfully and maliciously and with intent to injure and harass plaintiff." The allegations of the complaint in no way meet the test laid down by Judge Hubbs that "every one has a right to use the machinery of the law, and bad motive does not defeat the right. There must be a further act done outside the use of the process — a perversion of the process." A case note in the Harvard Law Review (vol. 27, p. 594), cited with approval by Judge Hubbs, states: "Malicious abuse of process is defined as the employment of legal process for a purpose not designed by law. See Cooley on Torts, 2 ed., p. 220. Under this broad definition any suit brought maliciously would be malicious abuse of process. The action must be more restricted. Two elements would seem to be essential: an ulterior motive, *and an act in the use of process not proper in the proceeding.* * * * [citing cases]. It may be admitted that the wrong is as great in the principal case, where the ulterior motive, the prevention of

the sale, is accomplished by the mere attachment, as in cases where a further act is done. But the right to use the machinery of the law to enforce a valid claim is a right so absolute that bad motive will not remove the justification" (emphasis supplied). Leading text writers are in agreement. Professor Cooley says: "'Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.' * * * The action will not lie unless there has been an unlawful interference with the person or property of plaintiff under color of the process" (1 Cooley on Torts [4th ed.], § 131, pp. 437–438). Harper and James, The Law of Torts (vol. 1, § 4.9, p. 331), discussing malicious abuse of process, says: "If the process is employed from a bad or ulterior motive, the gist of the wrong is to be found in the uses to which the party procuring the process attempts to put it. If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive." Prosser's Law of Torts ([4th ed.], § 121, p. 857) declares: "The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; *and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions*" (emphasis supplied). Prosser goes on to say (p. 857): "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Here defendants gained — and they stood to gain — no collateral advantage from the damages claimed to have been suffered by plaintiff, i.e., the payment of money to the subpoenaed regular teachers and to the substitutes hired because of their absence. Nor could the issuance of the subpoenas have acted "as a threat or a club", since plaintiff was not a party to the PERB proceeding in which the subpoenas were properly issued for witnesses whose testimony plaintiff nowhere claims was not needed by defendants. The damages for which the Board sues, allegedly arising from the abuse of process, are the amounts which it, like most other employers, paid as wages to its employees who had been absent in compliance with validly issued subpoenas. The same answers hold true with respect to the costs of hiring substitutes to do what the absent regular employees would have done if they had not been compelled to be absent while complying with process properly and legally served on them. The authorities above cited in my opinion mandate a holding that the first cause of action does not state facts sufficient to make out a case of abuse of process. Since the second cause of action seeking punitive damages depends for its validity on the first cause of action, it, too, is legally defective. A claim for punitive damages does not constitute a separate cause of action and the "assessment of punitive damages is an incident of damages which requires proof of a cause of action" (*Kallman v. Wolf Corp.*, 25 A D 2d 506–507). Thus, the above view as to the first cause of action applies as well to the second (*Browdy v. State-Wide Ins. Co.*, 56 Misc 2d 610). The third cause of action, seeking recovery on a prima facie tort theory, also fails to state a cause of action. Its key allegation is that "the *primary* purpose of preparing, issuing, serving and delivering said subpoenas as aforesaid was to insure the payment of the affected teachers for that day by plaintiff and for the further ulterior purpose of compelling plaintiff to engage the services of qualified substitutes to conduct classes at additional

expense to the school district. That defendants' action constituted a prima facie tort" (emphasis supplied). It is now settled law that an essential element of a claim based on prima facie tort is that the defendant's acts and motives are *solely* malicious and "unmixed with any other" (*Reinforce, Inc.* v. *Birney,* 308 N. Y. 164, 169–170; *Beardsley* v. *Kilmer,* 236 N. Y. 80, 90). In *American Bank & Trust Co.* v. *Federal Bank* (256 U. S. 350, 358) Mr. Justice Holmes used the epigrammatic phrase "disinterested malevolence" which, according to Chief Judge Hiscock in *Beardsley* v. *Kilmer* (*supra,* p. 90) described the doctrine that "the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." In *Ruza* v. *Ruza* (286 App. Div. 767, 769) Judge Breitel (now Chief Judge) said: "The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. The need for the doctrine of prima facie tort arises only because the specific acts relied upon — and which it is asserted caused the injury — are not, in the absence of the intention to harm, tortious, unlawful, and therefore, actionable. The remedy is invoked when the intention to harm, as distinguished from the intention merely to commit the act, is present, *has motivated the action, and has caused the injury to plaintiff, all without excuse or justification*" (emphasis supplied). See, also, *RKO-Stanley Warner Theatres* v. *Century Circuit* (37 A D 2d 828, 829), where the court said: "The general allegations of the first cause of action, attempting to sound in prima facie tort, are legally insufficient; they could not sustain any conclusion that the acts of the defendant competitors were in themselves unlawful or served exclusively motives other than profit and self-preservation, in an avowedly competitive business area. *The allegations of this complaint fail to suggest, no matter how broadly read, that the defendants' acts were solely 'malicious' and done without legal or social justification*" (emphasis supplied). What I said in *Steward* v. *World-Wide Autos. Corp.* (20 Misc 2d 188, 202) in dealing with a similar issue would seem to be clearly applicable here: "Plaintiff, after setting forth all of the essential ingredients of a cause of action for prima facie tort, has negatived her right to recover thereunder because she has herself alleged the excuse and justification which is required 'if the defendant is to escape.'" For the foregoing reasons the order appealed from should be reversed and the motion to dismiss the complaint should be granted.