GAMBAR ENTERPRISES, INC., et al., Respondents, v KELLY SERVICES, INC., Appellant.

Fourth Department, July 13, 1979

APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey (John W. Clarke* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (Frank H. Penski* of counsel), for respondents.

### OPINION OF THE COURT

MOULE, J.

On March 8, 1971 plaintiff James Wood executed a form agreement prepared by defendant Kelly Services, Inc. (Kelly), entitled "branch manager contract" in which he was designated as an independent contractor acting as Kelly's agent in furnishing temporary business services in Monroe County. Formerly, Wood was employed by Kelly at its corporate headquarters in Michigan. Under the branch manager contract, Wood principally agreed to devote such time and employ

such resources as were necessary to achieve and maintain "satisfactory sales performance" as evaluated by Kelly based upon potential sales and sales in comparable territories, to provide suitable office facilities and employ sales and office personnel and to interview prospective temporary service employees and hire them on Kelly's payroll. Among Kelly's duties under the contract were: providing essential instructions, manuals and materials for the conduct of the temporary services business, administering the payroll accounts of the temporary service employees and bonding and insuring these employees, handling the accounts receivable, and nationally advertising the business. As commissions, Kelly agreed to pay Wood 45% of the monthly gross margin under $8,000 accrued on Kelly's books for services performed by the temporary service employees covered by the agreement and 40% of the monthly gross margin over $8,000.

The term of the branch manager contract was expressly set forth in the agreement: the agreement was to terminate upon the death or incompetency of Wood or upon Wood's reaching age 65, in which event Kelly could continue the agreement from year to year. The agreement also provided for termination: at Kelly's option "for cause", in the event Wood violated a provision of the agreement, entered bankruptcy, was convicted of a felony, allowed his reputation to become impaired through publicity or notoriety, competed with Kelly within 50 miles of a city in which Kelly was operating, or disclosed Kelly's trade secrets to others; at Kelly's option "due to circumstances beyond control", in the event that continuance of the business contemplated by the agreement in a normal profitable manner was impaired because of labor union activity, legislative enactment, regulation or interpretation thereof, military action, act of God, war or civil disorder, or any similar circumstance; and, by either party, as follows:

"8. *Termination by the Parties.* This agreement may be terminated by either the Manager or by Kelly as follows:

"(a) The Manager may terminate by giving notice to Kelly, in which event this agreement shall terminate at the end of eight (8) accounting weeks. If the Manager shall give notice of termination under this sub-paragraph, Kelly shall have the option to terminate this agreement at any time prior to the expiration of the eight (8) week period, but in such event the Manager shall continue to be paid the net commissions from the business in the Territory until the date upon which this

agreement would otherwise have terminated because of the notice given by the Manager. * * *

"(b) Should Kelly wish to terminate this agreement *for any reason* [emphasis added] other than as set forth in sub-paragraph (a) above, paragraph 7 [term of agreement], paragraph 9 [termination for cause], paragraph 10 [termination due to circumstances beyond control], paragraph 19 [termination upon determination that agreement is invalid], Kelly may do so, and such termination shall be immediately effective, but Kelly shall thereupon become obligated to pay to the Manager, in addition to the commissions earned in the Territory to date of termination, a sum of money equal to the net commissions earned in the Territory in the Accounting Month or Months preceding the Accounting Month in which Kelly's notice of termination is given in accordance with the following schedule:

| If this agreement has been in force: | The sum of money will be equal to net commissions earned in the preceding: |
|---|---|
| Less than One (1) year | One (1) Month, Less $1,500 |
| One (1) year but less than Two (2) years | Two (2) Months, Less $3,000 |
| Two (2) years or more | Three (3) Months*, Less $4,500 |

"* This period will be six (6) months if: (1) this agreement has been in force five (5) years or more, and (2) the hours or services rendered to customers during the 12 month period (the 'Base Period') immediately preceding the month of termination exceed by at least 5% the hours rendered to customers in the 12 month period preceding the Base Period, less $9,000."

Wood has performed as Kelly's branch manager since the execution of the agreement in 1971. In 1975 Kelly agreed to expand Wood's territory under the branch manager contract to include Ontario County. Wood's annual commissions under his agreement with Kelly increased from $59,488 in 1972 (his first full year) to $151,635 in 1978. In August, 1977 Wood assigned his rights under the branch manager contract to plaintiff Gambar Enterprises, Inc., a corporation which he solely owns. On February 26, 1979 Kelly wrote a letter to Wood in which it revoked its acceptance to the assignment of the branch manager contract and elected to terminate the agreement effective March 2, 1979 under the provisions of subdivision (b) of paragraph 8. No reason was offered for the termination; however, Kelly claims that it was dissatisfied with Wood's performance. Kelly did not claim at the time it

sought to terminate the branch manager contract that Wood failed to achieve and maintain "satisfactory sales performance" such that it could terminate the agreement "for cause".

Plaintiffs commenced this action on February 28, 1979 by service of a summons and a complaint alleging six causes of action: first, plaintiffs sought a permanent injunction preventing Kelly from revoking its consent to the assignment of the branch manager contract and from terminating the contract without a good reason, alleging, among other things, that the contract is one of adhesion and that the termination was made in bad faith; second, plaintiffs sought a declaration that the contract is void because subdivision (b) of paragraph 8 is unconscionable; third, plaintiffs sought a declaration that the contract is void because subdivision (b) of paragraph 8 constitutes a liquidated damages provision bearing no reasonable relation to the effect of termination of the contract; fourth, plaintiffs sought to reform subdivision (b) of paragraph 8 of the contract to reflect the intention of the parties that Kelly should be required to establish good cause for any termination; fifth, plaintiffs sought $1,000,000 in damages for Kelly's breach of the contract through its termination of the agreement; and, sixth, plaintiffs sought the alleged fair value of their Kelly "franchise", assertedly $1,000,000, in the event the contract was properly terminated but the liquidated damage provision of subdivision (b) of paragraph 8 is unenforceable.

Plaintiffs moved for a preliminary injunction under CPLR 6301 and obtained an order to show cause temporarily restraining Kelly from revoking its consent to the assignment of the branch manager contract and from terminating the contract, along with incidental relief, pending a hearing on the application for a preliminary injunction. Kelly cross-moved for dismissal of the complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7). Special Term granted plaintiffs' application for a preliminary injunction upon the condition that they file an undertaking in the amount of $2,500, denied Kelly's motion to dismiss the complaint, and granted a trial preference.

Kelly contends that the branch manager contract should be construed in accordance with Michigan law and that plaintiffs have failed to state a cause of action under Michigan law. Alternatively, Kelly contends that plaintiffs have failed to state a cause of action under New York law. Plaintiffs, on the other hand, assert that New York law should govern the

construction of the branch manager contract and that they have stated a cause of action under the law of either New York or Michigan.

■ Paragraph 18 of the branch manager contract provided, among other things, that "this agreement shall be construed in accordance with the laws of the State of Michigan except with respect to [a restrictive covenant not to compete] which shall be construed in accordance with the laws of the State in which [Wood's] primary business address is located." Traditionally, where the parties have manifested their intentions to have an agreement governed by the law of a particular jurisdiction, their intentions have been honored *(Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 265, n; *Compania de Inversiones Internacionales v Industrial Mtge. Bank,* 269 NY 22, 26; *Dougherty v Equitable Life Assur. Soc.,* 266 NY 71, 80; cf. *Haag v Barnes,* 9 NY2d 554). In this respect, the general rules concerning the law governing a contract are subordinate to the primary canon of construction requiring that the intention of the parties be given effect (8 NY Jur, Conflict of Laws, § 20). The jurisdiction whose law the parties intended to apply, however, must bear a reasonable relation to the agreement *(A. S. Rampell, Inc. v Hyster Co.,* 3 NY2d 369, 381); and the enforcement of the provision applying a foreign rule of law must not violate a fundamental public policy of New York (see 8 NY Jur, Conflict of Laws, § 24).

The record shows that the State of Michigan has sufficient contacts with the branch manager contract between Kelly and Wood to warrant an application of Michigan law. The contract, by its own terms, did not become effective until it was accepted by Kelly at its home office in Michigan. Further, several of the duties to be performed by Kelly under the contract were performed at its home office in Michigan. Kelly's temporary employees in Monroe and Ontario Counties, although interviewed and assigned to customers by Wood, mail their time cards to Kelly's home office where Kelly performs its payroll functions and mails to the employee a paycheck and, to the customer, an invoice. Additionally, Kelly's responsibility for payment of payroll taxes for the temporary employees and for collection of accounts receivable undoubtedly involve substantial activity within the State of Michigan, as does Kelly's obligation to advertise nationally and to provide essential instructions and manuals. We believe that Michigan has been shown to have a reasonable relation

to the branch manager contract and, as we see no violation of a fundamental public policy of New York, we will give effect to the intention of the parties by applying Michigan law in construing their agreement.

■ In determining whether plaintiffs have stated a cause of action under Michigan law, we observe that the contract provision that the agreement was to be governed by Michigan law operated only to import the substantive law of Michigan (*Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, 397). Insofar as procedural questions are raised, we must apply the law of New York (see *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 381). Under our procedural law a complaint is deemed to allege whatever can reasonably be implied from its statements and motions to dismiss should not be granted unless it is clear that there can be no relief under any of the facts alleged in the complaint for the relief requested or for other relief (e.g., *Schlottman Agency v Aetna Cas. & Sur. Co.,* 70 AD2d 1041).

With respect to its contention that plaintiffs have not stated a cause of action under the substantive law of Michigan, Kelly asserts that subdivision (b) of paragraph 8 of the branch manager contract, providing for termination by Kelly "for any reason", is unambiguous and that no obligation of good faith should be implied in the exercise of the termination provision. In support of its assertion, Kelly cites cases involving agreements of indefinite duration (*Bushwick-Decatur Motors v Ford Motor Co.,* 116 F2d 675; *Biever Motor Car Co. v Chrysler Corp.,* 108 F Supp 948; *Martin v Ford Motor Co.,* 93 F Supp 920; *Dunn v Goebel Brewing Co.,* 357 Mich 693) and a case involving nonrenewal of a gasoline station lease (*Russell v Shell Oil Co.,* 382 F Supp 395, affd 497 F2d 924). In these cases, the courts refused, under Michigan law, to imply an obligation of good faith in the termination or nonrenewal of the agreements. In the present case, however, we are concerned not with an agreement of indefinite duration or a renewal of an agreement but, rather, with an agreement for a specified period of time (until Wood reaches age 65, becomes incompetent, or dies) with an option by Kelly to terminate "for any reason".

In *Watkins Co. v Rich* (254 Mich 82) the Michigan Supreme Court was presented with an agreement executed on May 8, 1928 giving Rich the right to purchase goods of J. R. Watkins Co. and to resell them in an allotted territory until March 1,

1929. As such, it was an agreement for a definite term. The agreement contained a provision allowing either of the parties to terminate it at any time by giving the other party notice in writing. Along with this provision was an acceleration clause making any indebtedness due upon such termination. J. R. Watkins Co. terminated the agreement and sought to recover outstanding debts from Rich's sureties, who had signed the contract. Upon a trial, the court discharged the sureties finding (p 84) that "[t]he cancelling of the contract by the plaintiff was obviously and as a matter of fact an arbitrary exercise of the will of the plaintiff and was not a reasonable and good-faith exercise of the power conferred by the contract to terminate the same by notice." On appeal, the Michigan Supreme Court affirmed, stating (pp 84-85): "A provision in a contract for termination at the option of a party is valid. But where the relationship is commercial and does not involve fancy, taste, sensibility, judgment, or other personal features, the option may be exercised only in good faith [citations omitted]".

■■ The rule of *Watkins* recently was cited with approval by the Michigan Court of Appeals *(Murphy v Seed-Roberts Agency,* 79 Mich App 1, 14) and we conclude that under Michigan law an option to terminate an agreement entered into by the parties in a commercial relationship must be exercised in good faith. Accordingly, insofar as plaintiffs allege a bad faith termination and breach of the branch manager contract by Kelly, we hold that they have stated a cause of action under Michigan law.[1] In so holding, we observe that our conclusion is not premised as erroneously assumed in the concurring opinion on a construction of subdivision (b) of paragraph 8 requiring a showing of good cause for termination. Rather, we base our conclusion on the requirement that plaintiffs exercise the termination provision in good faith. As Kelly's cross motion to dismiss was addressed to the complaint in its entirety and at least one cause of action is sufficient, the cross motion should be denied *(Park v Chessin,* 60 AD2d 80, 82-83, mod 46 NY2d 401; *Gro-Up Frocks v Manners,* 55 AD2d 531, 532; *Board of Educ. v Farmingdale Classroom Teachers Assn.,* 46 AD2d 794, mod 38 NY2d 397; *De Maria v Josephs,*

---

1. As we believe Michigan law governs the construction of subdivision (b) of paragraph 8 of the branch manager contract, we do not find it necessary to reach Kelly's contention that plaintiffs have not stated a cause of action under New York law.

41 AD2d 655; *Carner v City of Buffalo,* 33 AD2d 1098; cf. *Long v Beneficial Fin. Co. of N. Y.,* 39 AD2d 11).

With respect to the preliminary injunction granted by Special Term, Kelly contends that plaintiffs have shown neither a clear right to relief nor irreparable injury to warrant a preliminary injunction and that, in any event, the amount of the undertaking is inadequate.

■ To be granted a preliminary injunction, a movant must demonstrate (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of equities favors his position *(Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987, 988; *Matter of Armitage v Carey,* 49 AD2d 496, 498; *Albini v Solork Assoc.,* 37 AD2d 835). As we stated in *Tucker v Toia* (54 AD2d 322, 325-326), however, "it is not for this court to determine finally the merits of an action upon a motion for preliminary injunction; rather, the purpose of the interlocutory relief is to preserve the *status quo* until a decision is reached on the merits *(Hoppman v Riverview Equities Corp.,* 16 AD2d 631; *Weisner v 791 Park Ave. Corp.,* 7 AD2d 75, 78-79; *Peekskill Coal & Fuel Oil Co. v Martin,* 279 App Div 669, 670; *Swarts v Board of Educ.,* 42 Misc 2d 761, 764, *supra.* Cf. *Walker Mem. Baptist Church v Saunders,* 285 NY 462, 474)." Further, on an appeal from the granting of a preliminary injunction, we should not interfere with the exercise of discretion by Special Term and will review only to determine whether that discretion has been abused *(Western Regional Off-Track Betting Corp. v Town of Henrietta,* 46 AD2d 1010; *R & J Bottling Co. v Rosenthal,* 40 AD2d 911).

■ ■ We believe that plaintiffs have made a sufficient showing of likelihood of success and irreparable injury. As to likelihood of success, "[i]t is enough if the moving party makes a prima facie showing of his right to relief; the actual proving of his case should be left to the full hearing on the merits [citations omitted]" *(Tucker v Toia, supra,* p 326). Plaintiffs have set forth facts supporting their claim that Kelly breached the branch manager contract by terminating it in bad faith. Additionally, should a preliminary injunction not be granted, plaintiffs assert their inability to continue paying the salaries of the permanent office staff, the loss of contact with customers and temporary employees, and, as a result of a

restrictive covenant not to compete,[2] loss of the ability to work in the temporary business services field. Under these circumstances, Special Term did not abuse its discretion in granting a preliminary injunction (see *Picotte Realty v Gallery of Homes,* 66 AD2d 978). The granting of the preliminary injunction, however, does not decide the question whether plaintiffs are entitled to a permanent injunction, which must be resolved at trial *(Tucker v Toia,* 54 AD2d 322, 326, *supra; Bond Stores v Turner,* 262 App Div 417, 419). Finally, Special Term did not abuse its discretion in fixing the amount of the undertaking for the preliminary injunction.

Accordingly, the order should be affirmed.

HANCOCK, JR., J. (concurring). I agree that the order denying the motion to dismiss the complaint and granting the preliminary injunction should be affirmed. I cannot, however, accept the majority's conclusion that Michigan law necessarily requires that the termination clause in question may only be exercised in good faith. A requirement of good faith, in my opinion, entails a demonstration of the existence of some sufficient reason for termination.

The termination clause of subdivision (b) of paragraph 8 when viewed in the context of the contract as a whole may arguably be read to permit defendant to terminate the contract for any reason whatsoever. At the very least, the clause is ambiguous, and without parol evidence it may not be interpreted to mean that defendant may terminate the contract only for sufficient cause.

The full termination clause of subdivision (b) of paragraph 8 states: "Should Kelly wish to terminate this agreement *for any reason other than as set forth* in [par 8, subd (a); pars 7, 9, 10, or 19], Kelly may do so." (Emphasis added.) Paragraph 9 provides for "Termination for Cause." Thus, the clause itself appears to rule out "cause" as a requirement for termination under subdivision (b) of paragraph 8, because it provides for termination "for any reason *other than* as set forth in * * * paragraph 9," i.e., for any reason other than "cause".

An analysis of other provisions of the contract lends weight to this interpretation. Paragraph 9, "Termination for Cause,"

---

2. The restrictive covenant provided that Wood shall not compete with Kelly after the effective date of termination of the branch manager contract for a period of six months within 50 miles of any city in which Kelly is then doing business. The record shows that Kelly has branch offices in over 300 cities in the United States. On this appeal, we are not called upon to determine the validity of the restrictive covenant, and we do not reach this question.

allows defendant to cancel the contract without payment of any sum for various reasons including bankruptcy of the manager, conviction of the manager of certain felonies, and, most importantly, violation of any of the provisions of the agreement.[1] It should be noted that a violation of the contract which would give cause for cancellation under subdivision (a) of paragraph 9 would include failure of the manager to fulfill his obligations under paragraph 3, entitled "Manager's Duties." One such duty is to "[d]evote such time and employ such resources as are necessary to achieve and maintain 'satisfactory sales performance'." Thus, under paragraph 9, the manager may be discharged (after notice and a reasonable opportunity to comply) without payment of any sum for inadequate performance under the contract.

Plaintiffs would interpret subdivision (b) of paragraph 8 as impliedly containing a requirement of sufficient cause for termination identical to the requirement set forth expressly in paragraph 9. To read into subdivision (b) of paragraph 8 such a requirement would result in two provisions for termination for "cause" and would render one or the other unnecessary and meaningless. In interpreting a contract one must assume that the parties intended to give effect to every provision of the contract (see 10 NY Jur, Contracts, § 208). Plaintiffs' interpretation violates this rule. Moreover, plaintiffs' interpretation would result in an anomaly because paragraph 9 provides for termination for cause without payment and subdivision (b) of paragraph 8 as read by plaintiffs would provide for termination for cause with payment to the manager of a specified sum. Thus, as read by plaintiffs, there would be two provisions in the contract for termination for the same reason,

---

1. Paragraph 9 reads as follows:

*"Termination for Cause.* Kelly may, at its option, terminate this agreement immediately upon giving written notice of such termination in the event that:

"(a) The Manager or his agents or employees shall violate any of the provisions of this agreement, provided that notice of such violation has been given and a reasonable period of time not in excess of sixty (60) days granted for compliance.

"(b) The Manager: (1) shall enter into bankruptcy, receivership or shall make an assignment for the benefit of creditors; (2) shall be convicted of a felony or a crime involving moral turpitude, or converts or embezzles any property or funds of Kelly or others; (3) allows his reputation for honesty, integrity, fair dealing or good moral character to become impaired through publicity or notoriety; (4) competes, directly or indirectly, with Kelly within fifty (50) miles of any city in which Kelly shall now or shall be doing business or assists such competition; (5) discloses to any person not specifically authorized by Kelly any of the confidential data or trade secrets furnished to the Manager by Kelly in connection with the Kelly Services business."

one of which requires payment upon termination and one of which does not. A construction of the contract which would result in such an anomaly should be avoided (see, generally, 10 NY Jur, Contracts, §§ 208, 214).

Plaintiffs' construction also seems inconsistent with what appears to be the logical business sense of the arrangement, i.e., that where there was a sufficient reason for canceling the contract (as where the manager violated the provisions of the contract or was convicted of a felony involving moral turpitude) defendant could do so with no financial liability. Where, however, defendant wished to exercise the privilege of cancellation without sufficient reason, defendant would be required to pay for exercising that privilege by compensating the manager on termination as provided in subdivision (b) of paragraph 8.

In sum, I believe significant questions exist with respect to the meaning of the termination clause. The parties should, therefore, be permitted to present evidence as to their intentions at the time the contract was formed.

I cannot agree that, if the trial court were to find that the contract permitted termination for any reason whatsoever, Michigan law would, despite that finding, impose upon the defendant an obligation to terminate in good faith. *Watkins Co. v Rich* (254 Mich 82) does not create such a requirement. In that case, plaintiff, a distributor, entered into a 14-month contract with defendant, a salesman, in connection with which plaintiff insisted that defendant obtain numerous sureties to secure a previous debt owed plaintiff by defendant as well as any future debt. After the sureties were obtained and before defendant had an opportunity to make further sales, plaintiff terminated the contract and sued the sureties for the entire amount due pursuant to a clause in the contract allowing either party to terminate "at any time." The court held that the termination was not a reasonable and good faith exercise of the power conferred by the contract, noting (p 85) that "[p]laintiff's conduct justifies a serious doubt that it ever intended to extend to Rich the benefit of the contract for its term. The testimony strongly indicated that plaintiff was concerned with securing the execution of a contract to pay the old debt by sufficient sureties, and, having obtained their guaranty, desired to make immediate collection." The Second Circuit, interpreting Michigan law in *Bushwick-Decatur Motors v Ford Motor Co. (116 F2d 675, 676) stated that in*

*Watkins,* " 'good faith' * * * seems to have meant an original intention to offer the agent a fair opportunity, without which the contract would obviously have been void for fraud in its inception." In *Bushwick* (p 677), the court rejected the argument that Michigan law requires that termination options be exercised in good faith and affirmed summary judgment in favor of a manufacturer who gave notice of termination under a contract of indefinite duration providing for termination "at any time 'at the will of either party'." (See *Busam Motor Sales v Ford Motor Co.,* 203 F2d 469; *Biever Motor Car Co. v Chrysler Corp.,* 108 F Supp 948, affd 199 F2d 758; *Martin v Ford Motor Co.,* 93 F Supp 920, all of which apply Michigan law; see, also, *Corenswet, Inc. v Amana Refrigeration,* 594 F2d 129.) The court in *Bushwick* noted that the contract in *Watkins,* which extended the relationship between the parties for 14 months to terminate on a specified date, was one for a "definite and stated duration." The contract before us is not such a contract. It contains no specific termination date but provides for termination upon the death, incompetence, or attainment of retirement age of one of the parties.[2]

Dillon, P. J., and Doerr, J., concur with Moule, J.; Simons and Hancock, Jr., JJ., concur in an opinion by Hancock, Jr., J.

Order unanimously affirmed, with costs.

---

2. It is arguable that the contract before us is a contract of indefinite duration with outside limits permitting defendant to terminate when the manager is presumed to be no longer able to perform. I do not think such limits preclude the application of *Bushwick* and the cases cited therewith. In any event, it appears that the term of the contract is but one element to be considered in ascertaining the intention of the parties with respect to a termination clause. Certainly *Watkins* cannot be read as stating a rule that all contracts of "definite and stated duration" contain an implied requirement that a termination option be exercised in good faith.