Patrick M. SMITH, Plaintiff–Appellee,

v.

STATE of Oklahoma, ex rel., the BOARD OF REGENTS OF OKLAHOMA STATE UNIVERSITY, a constitutional state agency, Defendant–Appellant.

No. 77199.

Supreme Court of Oklahoma.

Jan. 19, 1993.

ORDER

Plaintiff–Appellee, Patrick M. Smith has moved to dismiss the appeal of Defendant–Appellant, Board of Regents of Oklahoma State University. Upon consideration of the briefs of the parties we hold that Plaintiff–Appellee's motion to dismiss this appeal for mootness should be GRANTED.

It is therefore ORDERED that Defendant–Appellant's appeal be and the same is DISMISSED.

HODGES, C.J., and SIMMS, ALMA WILSON, KAUGER, WATT, JJ., concur.

LAVENDER, V.C.J., and HARGRAVE, OPALA and SUMMERS, JJ., dissent.

OPALA, Justice, with whom HARGRAVE and SUMMERS, Justices, join, dissenting.

The court dismisses for mootness this appeal from a *preliminary decree of injunction* [1] that (1) bars Oklahoma State University [University or OSU] from denying Patrick M. Smith's [Smith] re-enrollment for the 1991 spring semester, (2) compels OSU to "accommodate his learning disability" in conformity with the provisions of § 504 of the Rehabilitation Act of 1973 [Act] [2] by giving him additional time

note 15, supra; *State v. Mike Kelley Constr. Co.,* note 15, supra; *Weaver v. Bishop,* note 15, supra.

1. An "interim", "preliminary", "temporary" or "interlocutory" injunction are synonymous adjectives for relief pendente lite that *generally* leaves the parties *in statu quo* until the merits have been decided. *Glasco v. School Dist.,* 24 Okl. 236, 103 P. 687, 690 (1909); *Walbridge–Aldinger Co. v. City of Tulsa,* 107 Okl. 259, 233 P. 171, 175 (1925); *Drummond v. Jeffrey,* 179 Okl. 409, 65 P.2d 1212 (1937); *State v. Gillam,* 188 Okl. 10, 105 P.2d 773, 775 (1940).

2. Section 504 of the Rehabilitation Act of 1973, Pub.L. No. 93–112, 29 U.S.C. § 794 (1988). The pertinent terms of § 504 [29 U.S.C. § 794(a) (1988)] are:

"No otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

to complete the course work in two of his 1990 fall classes and (3) requires OSU to reconsider his grades in those courses.

I cannot join today's decision which accedes to Smith's argument that the issues on appeal have been mooted by after-occurring facts and after-enacted legislation.[3] *The court's dismissal order gives no reason for today's declaration that the appeal is moot. There is, in my view, no legal warrant for ascribing mootness to the issues sought to be presented. In an effort to so demonstrate, my dissent tests and rejects each of the grounds Smith has advanced for dismissal.*

Midappeal developments do not moot this controversy because the court's disposition of this case *can* be *effective.* The court may either affirm the interim (pendente lite) injunction, and thus leave Smith's *present* academic situation unaffected, or reverse that decision, in which (latter) event the case would stand as if it had never been decided.[4] On reversal Smith would stand in his pre-suit status.

I would hold today that OSU's appeal presents a lively "case or controversy" between antagonistic demands. Assuming the tendered issues to be moot, this case *nonetheless* falls within the well-defined public-law and likelihood-of-recurrence exceptions to the general mootness doctrine. It calls upon us to define, *in a setting likely to resurface frequently,* the *outer limit* of effective Congressional encroachments on OSU's *academic autonomy.* Today's dismissal allows Smith to complete a substantial part of his education under the *protective umbrella of an unreviewed temporary injunction,* which leaves unsettled a very important public-law question well capable of repetition.

## I

## THE CASE IS NOT MOOTED BY AFTER-OCCURRING EVENTS AND AFTER-ENACTED LEGISLATION

Smith rests his mootness argument on the notion that certain material midappeal developments preclude this court from affording OSU *any* effective relief. His motion to dismiss informs us of the following events: (a) he was permitted (by pendente lite relief) to be enrolled in the Spring 1991 semester at OSU and achieved a grade point average of 2.4, (b) thanks to the interim injunction, he is enrolled for the 1992–1993 school year and (c) new federal legislation, the Americans with Disabilities Act [ADA],[5] which applies to all state institutions of higher education, affords him antidiscrimination protection similar to, if not indeed more extensive than, the invoked Rehabilitation Act.

I find no merit in Smith's approach. His reliance on midappeal events rests on an unartful quest to supplement the appellate record.[6]

---

**3.** Mootness on appeal is a state or condition which prevents the appellate court from rendering effective relief. This court will neither decide abstract or hypothetical questions disconnected from affording actual relief nor make determinations when no practical relief is possible. *Morton v. Adair County Excise Bd.,* Okl., 780 P.2d 707, 711 (1989); *Rogers v. Excise Board of Greer County,* Okl., 701 P.2d 754, 761 (1984).

**4.** *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 (1985); *Parker v. Elam,* Okl., 829 P.2d 677, 682 (1992).

**5.** Public Law 101–336, 104 Stat. 328, 42 U.S.C. §§ 12101 et seq.

**6.** Smith tenders for our consideration *unverified extra-record facts* which are *not* incorporated as a part of his dismissal-for-mootness motion. While appellate scrutiny is generally confined strictly to the record of proceedings below, a well-recognized exception allows an appellate tribunal to consider only those after-occurring facts, transpiring during the pendency of an appeal, *which adversely affect the reviewing court's capacity to administer effective relief. Lawrence v. Cleveland County Home Loan Auth.,* Okl., 626 P.2d 314, 315 (1981); *Brown Investment Co. v. Hickox,* Okl., 369 P.2d 807, 808 (1962); *Carlton v. State Farm Mutual Automobile Ins. Co.,* Okl., 309 P.2d 286, 289–290 (1957); *City of Tulsa v. Chamblee,* 188 Okl. 94, 106 P.2d 796, 798 (1940). Rule 7, Rules of the Supreme Court of Oklahoma, 12 O.S. 1991, Ch. 15, App. 1, permits this court to receive evidence of jurisdictionally-sensitive midappeal events in favor of or in opposition to an appeal's dismissal. By affidavit attached to a dismissal motion the movant may apprise this court of any material midappeal development that *affects the court's cognizance of the case. Tulsa Tribune v. Oklahoma Tax Com'n,* Okl., 768 P.2d 891, 896 (1989) (Opala, V.C.J., dissenting). If counsel for Smith

## A.

### The Nature Of A Preliminary Injunction

A litigant's quest for a *preliminary* injunction is distinguishable from one for *permanent* injunctive relief. A suit—such as this—to enjoin a university from expelling a student for academic deficiency is commenced by filing a *petition* that raises issues to be reached on the merits. *Issues on the merits,* which are those that affect the claim or any available defenses against it,[7] *can be raised only by a pleading.*[8] If, as here, *temporary* relief is sought to prevent a university from barring a plaintiff-student's re-enrollment for academic deficiencies *before* the merits of litigation can be decided, the plaintiff must apply for an *interim* injunction.[9] The latter operates pendente lite to restrain a university as well as to preserve the *status quo* (i.e., the student's pre-expulsion standing) until the merits have been decided.[10] *An application for interim injunctive relief does not raise issues on the merits of the case.*[11] Neither appellate affirmance nor reversal of an interlocutory injunction decree could, without more, become an adjudication on the merits of the action. Issues resolved at this interim stage are never res judicata of the claim.[12] When they are retendered on trial of the plaintiff's quest for *permanent* injunction, both parties are free to offer *different or additional proof.*

## B.

### Issues Tendered By This Appeal From An Interim Injunction Are Statutorily Reviewable Before A Trial On The Merits Of This Action

Smith asserts that some of the questions OSU presses in this appeal should not be reached for appellate settlement at this stage; rather, they should await the nisi prius decision on the petition for permanent injunction. It is only then, Smith urges, the court could give *full* consideration to certain material midappeal developments. Moreover, he contends that no practical relief may be afforded OSU if this court were to reverse the interlocutory injunction decree now before it.

Even if this argument were correct, I could not ignore the terms of 12 O.S. 1991

---

intended to tender extra-record facts solely for the purpose of providing support for his later motion to dismiss the appeal for mootness, *he should have done so by affidavit* attached to his dismissal motion. *This he failed to do.*

Smith initially apprised us of the grades he earned pendente lite by attaching to the answer brief a copy of his Spring 1991 transcript. *Frey v. Independence Fire and Cas. Co.,* Okl., 698 P.2d 17, 20 (1985), teaches that a party cannot supplement the record on appeal by injecting into it material that was not before the trial court at the judgment stage. *See also Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 723 n. 4 (1986). Rule 18, Rules of the Supreme Court of Oklahoma, 12 O.S. 1991, Ch. 15, App. 1, provides in part that " * * * [e]xcept for photostatic copies of cases relied upon, materials *not included in the appellate record* may not be copied in or attached to the brief.* * * " (Emphasis added.)

7. *Roark v. Shelter Mut. Ins. Co.,* Okl., 731 P.2d 389, 390 (1987) (Opala, J., concurring); *Flick v. Crouch,* Okl., 434 P.2d 256, 261 (1967).

8. *Pleadings* are defined in 12 O.S.1991 § 2007(A). *See Morse v. Earnest, Inc.,* Okl., 547 P.2d 955, 957 (1976); *McDaniel v. Moyer,* Okl., 662 P.2d 309, 313–314 n. 15 (1983); DOBBS, REMEDIES, DAMAGES–EQUITY–RESTITUTION, 106 (1976). In an action for injunctive

relief a decree of permanent injunction constitutes the court's judgment in the case. *Morse, supra* at 957. For the definition of judgment see 12 O.S. 1991 § 681.

9. *Glasco, supra* note 1 103 P. at 690; *Weaver v. Bishop,* 174 Okl. 492, 52 P.2d 853, 868 (1935); *Morse, supra* note 8 at 957.

10. *Lincoln Bank and Trust v. Tax Com'n,* Okl., 827 P.2d 1314, 1317 (1992); *Gillam, supra* note 1 105 P.2d at 775.

11. *Brown v. Donnelly,* 19 Okl. 296, 91 P. 859 (syllabus 3 and 4) (1907); *Iowa City v. Muscatine Development Company,* 258 Iowa 1024, 141 N.W.2d 585, 591 (1966); *Gambar Enterprises v. Kelly Services,* 69 A.D.2d 297, 418 N.Y.S.2d 818, 824 (1979).

12. *Donnelly, supra* note 11 at syllabus 3 and 4; *Iowa City, supra* note 11, 141 N.W.2d at 591; *Gambar Enterprises, supra* note 11, 418 N.Y.S.2d at 824. Traditionally, *a requirement for res judicata effect is that the judgment be on the merits.* FRIEDENTHAL, KANE AND MILLER, CIVIL PROCEDURE, HORNBOOK SERIES, § 14.7, p. 650. By its very nature a preliminary injunction does not meet this requisite element of res judicata.

§ 993(A)(2),[13] which confer in absolute terms *an unqualified right to appeal from a nisi prius temporary injunction.* Neither the claim of prematurity nor some other, purely prudential considerations can defeat *this court's statutory reviewing cognizance over interlocutory injunctions.*

Smith's suggestion that a *premature* decision of this appeal would be *unwise* challenges legislative wisdom in including temporary injunctions under the rubric of appealable decisions.[14] In essence, Smith's argument against "premature" review is an attack on OSU's undeniable statutory right to interim review. His position is unsustainable. Courts do not concern themselves with, and hence do not question, the merits, wisdom or advisability of legislative norms for appealability of judicial actions. Only the meaning and validity of statutes may be subjected to judicial scrutiny.[15]

### C.

*What Would Happen If The Preliminary Injunction Were Reversed?*

Smith asks rhetorically in his motion whether OSU would be legally free to sever Smith's status as a student if the preliminary injunction were reversed. The answer to this question would not hinge on the disposition of this appeal but on the outcome of the trial court's ultimate decision *on permanent injunction issues.* That controversy has not yet been reached. On *remand* after our pronouncement adverse to Smith, the lower court would be called upon to decide what status Smith will occupy between the effective date of reversal and the time disposition is made on the merits of this action—i.e., whether he could remain in school *until* the case is *finally* decided.

Smith also questions whether, on reversal of the interim injunction, OSU would be legally free to withhold from him the benefits of the federal act's reasonable academic accommodations. My answer to this question is that unless OSU's claim to academic autonomy were to prevail in this appeal so as to *free* the University from its duty of "reasonable accommodation" commanded by the federal law Smith invoked, he could not be foreclosed from claiming these benefits in his quest for permanent injunction. It is fair to add in this connection that extant federal precedent appears to militate against OSU's success in freeing itself entirely from the impact of Congressional requirements.[16]

### D.

*The ADA Does Not Affect Interim Injunction Issues*

Smith asserts that the appeal should be dismissed and the cause remanded for consideration of his rights under the ADA, a comprehensive federal act governing rights and remedies of persons with disabilities, which, we are urged, was made applicable *during the pendency of this appeal* (in 1992) to state institutions of higher education. This course, Smith counsels, is indi-

---

**13.** The granting of a temporary injunction falls within a class of interlocutory orders appealable by right. The terms of 12 O.S.1991 § 993(A)(2) provide in part:

"A. When an order:

    \*    \*    \*    \*    \*    \*

  2. denies a *temporary injunction....*"

    \*    \*    \*    \*    \*    \*

the party aggrieved thereby *may appeal* the order to the Supreme Court *without awaiting the final determination* in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order is issued. The Supreme Court may extend the time for filing the record upon good cause shown. \* \* \*" (Emphasis added.)

*Eason Oil Co. v. Howard Engineering,* Okl., 755 P.2d 669, 672 (1988); *DLB Energy Corp. v. Oklahoma Corp. Com'n,* Okl., 805 P.2d 657, 660 (1991).

**14.** *See* 12 O.S.1991 § 993(A)(2), *supra* note 13.

**15.** *State ex rel. York v. Turpen,* Okl., 681 P.2d 763, 766 (1984); *Application of Goodwin,* Okl., 597 P.2d 762, 766 (1979); *Blackwell Zinc Company v. Parker,* Okl., 406 P.2d 965, 969 (1965); *Haas v. Holloman,* Okl., 327 P.2d 655, 658 (1958).

**16.** *Southeastern Community College v. Davis,* 442 U.S. 397, 405–410, 99 S.Ct. 2361, 2367–2369, 60 L.Ed.2d 980 (1979).

cated by Oklahoma's extant jurisprudence.[17]

I cannot accede to Smith's position. His dismissal plea is for nothing more or less than the opportunity to recast his action by invoking *a newly-enacted regime of federal remedies* that was *not* in existence when Smith sought the preliminary injunction below. Smith is *bound* here by the law and theories he previously advanced before the nisi prius court. OSU has a statutory right in this case to corrective relief, if any be due, from the resolution of the interlocutory injunction issues tendered below. If OSU should prevail here, Smith would *nonetheless* be free to invoke once again—in the post-remand process on the merits of the case—any *additional or new* remedies then affordable to him by after-enacted legislation. In sum, an appellate disposition unfavorable to Smith would at this juncture not bar him, when the case is reached for trial on the merits, from amending his original petition by invoking the ADA remedies.[18]

### E.

*An Appellate Pronouncement On OSU's Defense Based On Inadequate Notice Of Smith's Learning Handicap Should Not Be Deferred Past Nisi Prius Adjudication Of Permanent Injunction*

Smith asserts that this court's resolution "at this late date"—two years after the preliminary injunction—of the key issue of whether OSU had timely "notice" of his learning disability would afford the University no practical relief. This is so, he argues, because OSU *now* has knowledge of his learning disability and *is* aware that his grades have improved with the interim academic accommodations provided him pendente lite.

The basis of OSU's appeal is that *Smith is not entitled* to the benefits of the federal law he invoked to ameliorate the consequences of his deficient academic performance, because he had *failed* to give the University *timely advance notice* of the very handicap that brings him under the federal act's protective umbrella. Even though that issue, along with others, will doubtless *resurface* at the trial on the merits (permanent injunction), OSU is *nonetheless statutorily entitled* in this appeal to a review of its argument that it is *free from the strictures of Congressional legislation for want of timely and adequate notice.* If OSU were successful here, the interim injunction would have to be vacated, but the case would nonetheless stand below for trial on the merits.

### II

### ASSUMING THAT THE ISSUES ARE MOOT, THIS CASE FALLS WITHIN TWO EXCEPTIONS TO THE MOOTNESS DOCTRINE

Assuming *arguendo* that the issues raised are now moot, two well-recognized exceptions to the mootness doctrine nonetheless shield the case from dismissal: public interest[19] and likelihood-of-recurrence.[20]

This case deals with the impact of the Smith-invoked federal anti-discrimination

---

**17.** Smith relies on *Saxon v. Macy,* Okl., 795 P.2d 101, 102 (1990), which deals with alleged violations of the Open Records Act. There, the plaintiff sought access to records of Rose State College, which were in the district attorney's possession. We dismissed the appeal from denial of the plaintiff's quest for injunctive relief because the district attorney had returned the records to the college whence access to them could have been available. We concluded that an appellate pronouncement would result in no effectual relief to the plaintiff. In my dissent I urged the court to remand the cause for reconsideration in light of seemingly applicable after-enacted legislation.

**18.** *Seymour, supra* note 4 at 512–513; *Parker, supra* note 4 at 682.

**19.** *Northeast Okl., Elec. v. Corporation Com'n,* Okl., 808 P.2d 680, 683 (1991); *Westinghouse Elec. v. Grand River Dam Auth.,* Okl., 720 P.2d 713, 719 (1986); *Lawrence, supra* note 6 at 315; *Goodwin, supra* note 15 at 764; *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948); *Payne v. Jones,* 193 Okl. 609, 146 P.2d 113, 116 (1944).

**20.** *In re D.B.W.,* Okl., 616 P.2d 1149, 1151 (1980); *Lawrence, supra* note 6 at 315–316; *Northeast, supra* note 19 at 683; *American Insurance Association v. State Industrial Commission,* Okl., 745 P.2d 737, 739 n. 7 (1987); *Peppers Refining Co. v. Corporation Commission,* 198 Okl. 451, 179 P.2d 899, 901 (1947).

statute on an institution of higher learning and with the extent to which the federal law in question may encroach upon the institution's asserted academic autonomy. Institutions of higher learning generally administer themselves *in conformity to their own internal law*—the law of the academe—unless, of course, they are validly affected by some restriction imposed by federal law or state legislation. OSU cannot conduct its day-to-day operations with the outer limit of its control over the students' academic achievements "up in the air".[21] Today's dismissal places in jeopardy OSU's authority to allocate credits to many of its students. OSU is entitled to know *now* whether in this case it is free to follow its internal rules for academic performance. Protecting OSU from uncertain-

ty that may produce a flood of lawsuits clearly falls within the public-policy exception. Most importantly, issues that relate to OSU's self-governance are more than likely to be retendered on the merits of this action.

I would hence hold today that the interaction of the encroaching federal law with OSU's time-honored claim to freedom of crediting the students' academic achievements presents a matter of broad or vital public interest[22] that is sure to *resurface* in other litigation, if it does indeed *evade* our review in this case.[23]

SUMMARY

The issues pressed by OSU in this appeal from interlocutory injunction are mooted neither by Smith's midappeal academic

21. Since the Middle Ages universities have enjoyed a history of self-governance, i.e. of independence from sovereign interference. R.HOFSTADTER, ACADEMIC FREEDOM IN THE AGE OF THE COLLEGE 3–11 Columbia University Press (1955); *see also* Daughtrey, The Legal Nature Of Academic Freedom In United States Colleges And Universities, 25 U.Rich. L.Rev. 233, 237 (1991). This recognition of university autonomy in matters academic continues in contemporary America. *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d. 523 (1985); *Regents of the University of California v. Bakke*, 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978); *Bd. of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). Federal jurisprudence grants deference to a university in decisions concerning academic standards and qualifications, *so long as the actions taken are not arbitrary or unlawful. Ewing, supra*, 474 U.S. at 225, 106 S.Ct. at 513; *Bakke, supra*, 438 U.S. at 312, 98 S.Ct. at 2759; *Horowitz, supra*, 435 U.S. at 96 n. 6, 98 S.Ct. at 958 n. 6 (Powell, J., concurring). The boundaries of university discretion have been rearticulated by recent jurisprudence. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 194–199, 110 S.Ct. 577, 585–587, 107 L.Ed.2d 571 (1990). For earlier decisional law see *Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957). "It is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail 'the four essential freedoms' of a university—to determine for itself who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Id.*, 354 U.S. at 263, 77 S.Ct. at 1218 (Frankfurter, J., concurring in result).

22. *Lawrence, supra* note 6 at 316.

23. At least one jurisdiction has held that the public-interest exception to the mootness doctrine requires review of issues that are *"essential in guiding the conduct of public officials." DeFunis v. Odegaard*, 84 Wash.2d 617, 529 P.2d 438, 444 (1974) (emphasis added). There, an unsuccessful applicant to a state university law school challenged the denial of his admission on equal protection grounds. The lower court granted injunctive relief and the state appellate court reversed, upholding the school's admissions policy. The plaintiff-student was in his last year of law school when the U.S. Supreme Court granted certiorari. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The Court held it was powerless to reach the merits of the controversy because the issues had been mooted by school officials' statements on oral argument that the student would be allowed to graduate regardless of the lawsuit's outcome. According to the U.S. Supreme Court, the case no longer met the "case or controversy" mandate of Art. III, U.S. Const. But the Court noted that "as a matter of Washington state law it appears that this case would be saved from mootness by the 'great public interest in the continuing issues raised by this appeal.'" *Id.*, 416 U.S. at 316, 94 S.Ct. at 1706 (citations omitted) (emphasis added). On remand the Washington Supreme Court *held* the issue *fell* within the *public-interest exception to the mootness doctrine and reinstated its previous decision. In the case before us, it is of equally paramount importance to provide guidance to OSU officials at this interim stage of the contest concerning a vexing and recurrent problem in the day-to-day administration of academic credits for students affected by the federal law Smith invoked here.*

progress nor by after-enacted federal legislation that extends the law's protection for disabled students. This court is *not* powerless to grant effective interim relief by settling the issues OSU presents in this appeal, though their resolution *may not be dispositive of this action's merits.* OSU has a *statutory right* to corrective relief from preserved and timely pressed errors occurring in the preliminary injunction process.[24] Even if—for the sake of argument—we should assume that the issues sought to be advanced have been mooted, this case nonetheless falls clearly within *both* recognized exceptions to the mootness doctrine. It challenges the limit of the applicable federal law's encroachment on the self-governance of an academic institution. The government's inroad into OSU's management of academic credits poses an important public-law exception to the mootness doctrine. If that issue does indeed appear to evade review today, a point I am unwilling to concede, it will most assuredly recur, both here and below, as a continuing and vexing problem in the administration of academic credits for those students who claim to be under the umbrella of protective Congressional legislation.

I would not dismiss this appeal, but would rather afford OSU full appellate review of all properly preserved and timely pressed issues.

**24.** *See* 12 O.S.1991 § 993(A)(2), *supra* note 13.