2000 OK CIV APP 142

STATE of Oklahoma ex rel. Joyce HOWARD, Plaintiff/Appellant,

v.

Dr. Marvin CRAWFORD and Dr. Betty Mason, individually, and in the capacity as Superintendents of the Board of Education of Independent School District No. 89, Oklahoma County, Oklahoma; Independent School District No. 89, Oklahoma County, Oklahoma, a.k.a Oklahoma City Public Schools; Leo L. Hise, Frank Kellert, Orel Peak, Ronald Bogle, Jennifer Puckett, Terri L. Silver, Kenny Walker, Michael Carter, Micael Chandler, Wayne Dempsey, Thelma R. Parks, and Tom Yeargain, individually, and as members of the Board of Education of Independent School District No. 89, Oklahoma County, Oklahoma; Defendants/Appellees,

and

Dr. Arthur Stellar, individually, and in the capacity as Superintendent of the Board of Education of Independent School District No. 89, Oklahoma County, Oklahoma; Defendants.

No. 94,295.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 8, 2000.

Certiorari Denied Nov. 28, 2000.

474

Gregg R. Renegar, Joan A. Renegar, Kornfeld Franklin Renegar & Randall, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

William P. Beakley, Stephanie J. Mather, the Center for Education Law, Inc., Oklahoma City, Oklahoma, For Defendants/Appellees Bogle, Carter, Chandler, Dempsey, Hise, Kellert, Parks, Peak, Puckett, Silver, Walker and Yeargain.

Margaret McMorrow–Love, Oklahoma City, Oklahoma, for Defendants/Appellees Crawford and Mason.

Tammy Carter, Associate General Counsel, Oklahoma City Public Schools, Oklahoma City, Oklahoma, for Defendant/Appellee Independent School District No. 89 of Oklahoma County, Oklahoma.

## OPINION

ADAMS, Judge:

¶1 Joyce Howard appeals a trial court order dismissing her action against the Oklahoma City Public Schools (District), its present and past Superintendents, and present and past members of the Board of Education, alleging that District had and was not properly spending the proceeds of two bond issues approved by District's voters in 1993. Although we conclude that the reasoning apparently underlying the trial court's decision to dismiss Howard's action and the legal principles upon which that decision was based are correct, we reverse because Howard was denied the opportunity to amend her petition to bring it into compliance with those principles and to challenge the evidentiary material presented by Defendants/Appellees to support their motion.

¶2 The essence of Howard's claim is her contention that District is violating the Bond Issue Proceeds Act (the Proceeds Act), 62 O.S.1991 §§ 571–577,[1] in using funds ob-

---

1. Section 574 requires a government entity like District to inform the voters of the general purpose for which bond proceeds will be expended and to identify specific projects upon which at least seventy percent of the bond proceeds will

tained by issuing the bonds authorized in the two propositions approved by District's voters in 1993. She also claims District's work on the projects included within those propositions violate Article 10, § 16 and § 19 of the Oklahoma Constitution and 62 O.S.Supp.1997 § 479.[2] Her petition requested an accounting from District concerning these projects, an injunction requiring District to comply with these provisions of Oklahoma law, and recovery of the statutory penalty under what are sometimes referred to as *qui tam* statutes, 62 O.S.1991 §§ 372 and 373. Shortly thereafter, Howard dismissed the claim against Defendant Stellar without prejudice.

¶ 3 The remaining defendants joined in a "Motion to Dismiss, or in the Alternative to Stay", in which they argued the case should be dismissed because (1) Howard brought her *qui tam* request under the wrong statute, (2) the forfeiture of office provision contained within the Proceeds Act for covered officials who "knowingly and willfully" violate the Proceeds Act is the only penalty for violations of that Act, (3) Howard did not give District a reasonable time to comply

with her *qui tam* demand before filing this action, and (4) action against some of the individual defendants who had not been in office within the two years preceding Howard's demand is barred by 62 O.S.Supp.1994 § 374. Alternatively, the remaining defendants argued the trial court should stay the action, including discovery, to allow District to complete the projects covered by 1993 bond issues and investigate Howard's allegations. Howard responded to the dismissal motion and subsequently applied to amend her petition to seek relief under the statute which the defendants had said was the applicable *qui tam* statute, as well as under the statute originally cited in her petition.

¶ 4 Apparently without ruling on Howard's request to amend, the trial court dismissed her claims against Defendants Dempsey, Hise, Peak and Mason based upon 62 O.S.Supp.1994 § 374[3] and granted the remaining defendants' (hereafter Defendants) alternative request for a stay. The trial court prohibited further discovery by Howard and ordered Defendants to report to the trial court "every ninety days with respect to

2. This section provides:

A. It shall be unlawful for the board of county commissioners, the county purchasing agent, the city council or the commissioners of any city, the trustees of any town, township board,

be expended. Section 574(C), which is a principally involved here, provides:

If any such bond issue is approved at an election, the particular governmental entity shall expend all of the proceeds of such bond issue for the purposes set out in the proposition voted upon and shall expend not less than eighty-five percent (85%) of the monies allocated to each specific project, unless such project can be completed for a smaller amount of money, on that project as published according to [Section 574(B) of the Proceeds Act] and for which the bond issue was approved. Provided, however, that if any money becomes available from any source outside the bond proceeds for any specific project, the outside funds would be used to reduce the amount of bond funds to be expended on that specific project. In such event, the governmental entity may expend that amount less than the specified eighty-five percent (85%) and may use the surplus funds on other projects within the same general purpose or to reduce the sinking fund. This section shall not apply in the event a final judicial determination or federal or state laws, regulations or rules preclude the undertaking or completion of a specific project.

school district board of education or any member or members of the aforesaid commissioners, or of any of the above-named boards, to willfully or knowingly make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality, county or school district or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for the current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue.

B. Any such indebtedness, contracted, incurred, acknowledged, approved, allowed or authorized in excess of the estimate made and approved for such purposes for the current fiscal year or in excess of the specific amount authorized for such purpose by a bond issue, shall not be a charge against the municipality, county or school district whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of said indebtedness, but may be collected by civil action from any official willfully or knowingly contracting, incurring, acknowledging, approving or authorizing or attesting to the indebtedness, or from the bondsmen of the official.

3. Howard's Petition in Error does not identify any alleged error in connection with this ruling, and therefore we affirm it without discussion.

its investigation and actions, including the progress of other lawsuits pending, involving the 1993 Bond Issue projects." Defendants ultimately filed two such reports. Howard responded to each report, and the trial court held hearings on the reports. At the hearings, the trial court denied Howard the opportunity to produce any evidence. Finally, in December of 1999, the trial court sustained Defendants' Motion to Dismiss without articulating the precise basis for doing so and filed an order dismissing Howard's claims against Defendants. This appeal followed.

## ANALYSIS

¶ 5 Because the trial court considered "matters outside the pleading," we must treat the trial court's dismissal order as one for summary judgment. 12 O.S.1991 § 2012(B). This approach is not only mandated by statute but is particularly appropriate on this record. It is apparent that, except for the early dismissal of a few defendants based on 62 O.S.Supp.1994 § 374, the bases articulated by Defendants in their dismissal motion became largely irrelevant,[4] and the case was decided based upon the conclusion that District was not violating the Proceeds Act, the Oklahoma Constitution or 62 O.S.1991 § 479 in any of the ways theorized by Howard. Our analysis begins with Howard's theory.

¶ 6 In a nutshell, Howard believes District is improperly spending the bond issue proceeds because it has already spent more than the amounts allocated on some specific projects identified in the published statement required by the Proceeds Act, in some instances by as much as 200 to 300 percent, before completing the remaining projects identified in the statement. According to Howard, this means that there will be insufficient bond issue proceeds to finish all of the specific projects identified in the statement. At least for purposes of this case, District

does not dispute this. However, District contends, and the trial court apparently agreed, that these actions do not violate Article 10, §§ 16 and 19 of the Oklahoma Constitution, the Proceeds Act or § 479.

### Constitutional Provisions

¶ 7 According to Article 10, § 16 of the Oklahoma Constitution, "[a]ll laws authorizing the borrowing of money by and on behalf of the State, county or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose." Similarly, Article 10, § 19 of the Oklahoma Constitution requires any resolution passed by a local legislative body "levying a tax" to "specify distinctly the purpose for which such tax is levied" and prohibits using a tax levied for one purpose to be used for another purpose. Howard argues District is violating these sections. We disagree.

¶ 8 Howard's theory is premised upon her belief that the specific projects outlined in the statement published by District as required by the Proceeds Act constitute the "purpose" for which the indebtedness was incurred and the additional ad valorem tax levied to retire that indebtedness. However, the first proposition adopted by the voters said the bond debt was to be incurred "for the purpose of improving school sites, constructing, repairing, remodeling and equipping school buildings" and the tax was levied to "pay the interest on such bonds as it falls due and also to constitute a sinking fund for the payment of the principal thereof when due." Similarly, the second proposition adopted by the voters said the bond debt was to be incurred "for the purpose of equipping school buildings and classrooms and acquiring school furniture, fixtures and equipment" and an identical purpose for the tax levy as that stated in the first proposition.

4. It should come as no surprise that the trial court did not readily rely upon the bases initially advanced by Defendants for dismissal. Defendants' complaint that Howard relied upon the wrong *qui tam* statute and should be limited to the relief afforded under the more restrictive statute afforded no basis for dismissing Howard's

claim. Even if Defendants were correct that the forfeiture for violations of the Proceeds Act was the exclusive remedy, that would have no effect on claimed violations of the Oklahoma Constitution and § 479. Finally, the lack of reasonable time to bring an action, while it might justify the stay, did not provide a basis for full dismissal.

¶ 9 *Sublett v. City of Tulsa*, 1965 OK 78, ¶ 38, 405 P.2d 185, 197, held Article 10, § 16 of the Oklahoma Constitution is satisfied by a *"general statement* of the purposes" of the bond issue. (Emphasis in original). *Sublett* rejected a challenge to bonds issued under a proposition which did not specifically allocate the money to be spent between an industrial park and a port, where the bond proposition provided for the construction of both in the general purpose. We can only conclude that the measure of District's compliance with Article 10, § 16 is not whether they spend the proceeds in the amounts allocated to each specific project in the statement published under the Proceeds Act on that project but whether they spend the bond proceeds in compliance with the general purpose stated in each proposition. We also must conclude that so long as the bond proceeds are used for those purposes, no violation of Article 10, § 19 occurs. The propositions specifically identified the purpose of the tax levies, *i.e.* to pay the interest and principal on the bonds.

### The Proceeds Act

■ ¶ 10 Howard says District must complete the specific projects identified in the statement required by the Proceeds Act or spend *all* of the bond issue proceeds allocated to that specific project on that project. We disagree.

¶ 11 As stated in 62 O.S.1991 § 572, the purpose of the Proceeds Act is to "guarantee to the citizens of the State of Oklahoma that the proceeds of bond issues approved by them will be expended only for the purposes or projects for which any such bond issue was approved." To accomplish that purpose, 62 O.S.1991 § 574(B) requires governmental entities such as District to include in the call of election for any bond issue covered by the Proceeds Act, "a general statement of all purposes and specific projects for which seventy percent (70%) of the proceeds shall be expended, with a further listing of the dollar amounts to be expended on each specific project." Section 574(B) also requires "[t]he

dollar figure left unlisted as to specific projects shall not exceed thirty percent (30%) of the total amount of the bond issue." District exceeded this requirement, choosing to include specific projects with allocated amounts totaling 100% of the bond issue proceeds.

■ ¶ 12 Section 574(C) of Title 62 addresses how the bond issue proceeds are to be expended if the bond issue is approved by the voters. It required District to "expend all of the proceeds of such bond issue for the purposes set out in the proposition voted upon and ... not less than eighty-five percent (85%) of the monies allocated to each specific project, unless such project can be completed for a smaller amount of money, on that project as published." It is important to note that § 574(C) makes two requirements: (1) 100% of the proceeds are to be spent on the purpose stated in the proposition which was presented to the voters, and (2) at least 85% of the proceeds allocated to a specific project are to be spent on that project unless it can be completed for less money.[5]

¶ 13 The first requirement is significant in that it indicates the Legislature's intent that we treat the *purpose* of the bond issue as not necessarily synonymous with the *projects* to which the proceeds of the bond issue are allocated in the statement required by § 574(B). The second requirement explicitly recognizes that the bond issuing entity might legally not spend more than 85% of the funds allocated to a specific project on that project *even where the project could not be completed for less than 85% of the amount allocated.*[6] Howard's contention that District was required to spend 100% of the amount allocated to specific project or complete it is inconsistent with the clearly expressed intention of the Legislature, and we are not free to deviate from that intention. *Oklahoma Association for Equitable Taxation v. Oklahoma City*, 1995 OK 62, 901 P.2d 800, *cert. denied*, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523.

---

5. There is a further exception to this 85% requirement where money from a source outside the bond issue proceeds can be used.

6. Apparently the Legislature concluded that the purpose stated in § 572 could be fulfilled by requiring the issuing entity to expend at least 59.5% (85% of 70%) of the bond proceeds on projects specifically identified in the statement.

478

¶ 14 According to 62 O.S.1991 § 479(A), it would be illegal for District or Defendants to incur any debt for District or enter into any contracts for District which would require District to spend "in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue." Focusing on only the last phrase, Howard contends this section prohibits District from spending any money which is not part of the bond issue on the projects outlined in the statement published under the Proceeds Act. We disagree.

¶ 15 The plain language of the statute is in the alternative. At least two sources of funds are available to District, the amount approved by the excise board for the purpose stated in the bond propositions and the amount of each of the bond issues for the purpose outlined in the particular proposition. Nothing in the plain language of § 479 prohibits District from using funds approved by the excise board for the fiscal year in question on these projects so long as they are used for the purpose approved by the excise board. As noted in *Oklahoma Association for Equitable Taxation v. Oklahoma City*, we are not free to ignore that clearly expressed intention.

### *Summary Judgment*

¶ 16 The reports furnished by Defendants, if unchallenged, demonstrate that District has not, as yet, violated Oklahoma law as it applies to school finance in handling the 1993 bond issue. However, the trial court did not allow Howard to conduct any discovery or to produce any evidentiary materials, but apparently assumed the truth of those facts. Under Rule 13, Rules for District Courts, 12 O.S.1991 Ch. 1, App. 2, Howard has the right to test Defendants' version of the facts to demonstrate that District has violated the Oklahoma Constitution, the Proceeds Act, or § 479, *as those provisions have been applied in this opinion.* Howard has not yet been afforded the opportunity to do so, and summary judgment was inappropriate. Given our rejection of Howard's basic theory, we cannot anticipate whether Howard will find it appropriate to proceed further on remand.

### CONCLUSION

¶ 17 The trial court properly granted judgment to Dempsey, Hise, Peak and Mason, and its judgment in that regard is affirmed. Although apparently properly interpreting the applicable law, the trial court improperly based its judgment in favor of Defendants on the untested facts stated in the reports while preventing Howard from producing any evidentiary materials of her own or testing the facts stated in the reports. The judgment of the trial court in favor of Defendants is reversed, and the case is remanded for further proceedings consistent with this opinion.

¶ 18 AFFIRMED IN PART, REVERSED IN PART AND REMANDED

¶ 19 HANSEN, V.C.J., and JOPLIN, J., concur.