Dear Sequoyah County District Attorney Gray,
¶ 0 This office has received your request for an Attorney General's Opinion in which you ask, in effect, the following question:
 May a district attorney's offices be placed in an area of the courthouse the construction of which was financed with proceeds of a county sales tax specifying that the tax was for a county jail facility?
 Background
¶ 1 Sequoyah County voters approved a county sales tax measure for the construction, operation and maintenance of a "county jail facility." Proceeds of the sales tax were used to build a jail annex to the county courthouse, including some space in excess of present jail needs. You ask whether a part of the annex may be used for the district attorney's offices, to the extent the space is not needed for the county jail.
¶ 2 The ballot, considered by county voters, provided for a county sales tax "pledging the monthly income of the revenue of said tax to the construction, operation and maintenance of the Sequoyah County Jail facility," and specifying how tax proceeds would be apportioned between construction, operation and maintenance.[1] The resolution calling the election, adopted by the Board of County Commissioners of the county, specified the purpose as follows:[2]
 Section V. Purpose of Revenues . It is hereby declared to be the purpose of this Title to provide revenues for the support of the functions of the government of Sequoyah County, Oklahoma, and all revenues derived from this tax shall be applied thereto in the following manner[:] two-thirds (2/3rds) of all revenues derived from said tax shall be deposited in the General Fund and set aside for the construction of the Sequoyah County Jail Facility and one-third (1/3rd) of said tax to maintenance and operation of the Sequoyah County Jail.
Jail Constr., Maint. and Operation Sales Tax Res., at 1. Upon approval of the sales tax by voters, a county-beneficiary public trust was created pursuant to the "Trusts for Furtherance of Public Functions Act" (see 60 O.S. 2001 Supp. 2003, §§176-180.4), and the space for the proposed jail facility was leased by the county to the trust. The public trust then issued revenue notes to finance the facility under a security agreement in which the county is to pay the proceeds of the sales tax, as received, over to the public trust for the term of the financing obligation.[3]
 I.
¶ 4 You ask whether, under the language in the ballot proposition and the sales tax resolution, the district attorney's offices may be housed in the facilities, to the extent they are not needed for a jail. Can such offices be considered a part of, or related to, the "Jail Facility?"
¶ 5 The Oklahoma Constitution, Article X, Section 19 requires:
 Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.
Id.
¶ 6 As to county sales taxes, Section 1370[4] of Title 68, in pertinent part provides:
 E. Any sales tax which may be levied by a county shall be designated for a particular purpose. Such purposes may include, but are not limited to, projects owned by the state, any agency or instrumentality thereof, the county and/or any political subdivision located in whole or in part within such county, regional development, economic development, common education, general operations, capital improvements, county roads, weather modification or any other purpose deemed, by a majority vote of the county commissioners or as stated by initiative petition, to be necessary to promote safety, security and the general well being of the people. The county shall identify the purpose of the sales tax when it is presented to the voters pursuant to the provisions of subsection A of this section. Except as otherwise provided in this section, the proceeds of any sales tax levied by a county shall be deposited in the general revenue or sales tax revolving fund of the county and shall be used only for the purpose for which such sales tax was designated. If the proceeds of any sales tax levied by a county pursuant to this section are pledged for the purpose of retiring indebtedness incurred for the specific purpose for which the sales tax is imposed, the sales tax shall not be repealed until such time as the indebtedness is retired. However, in no event shall the life of the tax be extended beyond the duration approved by the voters of the county.
Id.
¶ 7 The word "purpose" is used broadly in the constitution and in statutes requiring that the purpose of a tax must be stated. "Purpose" is not synonymous with a specific project. State exrel. Howard v. Crawford, 16 P.3d 473, 477 (Okla.Ct.App. 2000). Howard held no constitutional violation occurred when a school district, which had specified certain specific projects for use of school bond proceeds, used part of the proceeds for other school improvement projects. Id. at 478. While much of the opinion pertained to the construction of 62 O.S. 1991, §572[62-572], the Bond Issue Proceeds Act,[5] Howard citedSublett v. City of Tulsa, 405 P.2d 185, 197 (Okla. 1965), and concluded "the Oklahoma Constitution is satisfied by a `generalstatement of the purposes' of the bond issue." Howard,16 P.3d at 477 (alteration in original). Thus, Howard stands for the proposition that a reasonable measure of flexibility is allowed in a statement describing how tax proceeds will be spent, as long as the general purpose of the proposition is approved by the voters.
¶ 8 In Chicago, Rock Island and Pacific Railway Co. v. ExciseBoard, 29 P.2d 586 (Okla. 1934), the court held the residue of an amount raised by ad valorem taxation for the courthouse and jail construction could not be used for general current county expenses, "until such time as it was found to be no longer necessary for the purpose for which it was raised." Id.
Significantly, the court did not say surplus tax money raised for courthouse and jail construction could not be used for any other purpose whatsoever, but that surplus money could be used for other purposes only when there was a finding that the purpose for which the money was raised had been satisfied. Id. However, this case dealt only with proceeds of ad valorem taxes as distinguished from county sales taxes.
¶ 9 The ballot proposition and the commissioners' resolution described the purpose of the sales tax as being used for a "jail facility." In this context, we must consider what a "jail facility" might include. Neither "jail" nor "facility" nor the term "jail facility" is defined in Oklahoma statutes. Therefore, we must rely on the ordinary meaning of the words. 25 O.S. 2001,§ 1[25-1]. Further, a singular word includes the plural. Id. § 25. "Jail" means "a building for the confinement of persons held in lawful custody." Webster's Third New International Dictionary 1208 (3d ed. 1993). The word "facility" embraces anything which aids or makes easier the performance of the activities involved in a course of conduct or the business of a person or corporation. Id. at 812; see also Hartford Elec. Light Co. v.Fed. Power Comm'n, 131 F.2d 953, 961 (2d Cir. 1942). Thus, we conclude a "jail facility" includes not only cells, but also offices for jailers and administrative staff, areas for bathing and sanitation, janitorial services, food preparation or serving, inmate exercise, space for inmates to consult with their attorneys, and other necessary functions.
¶ 10 We note that in some county jails in the State, an area for in-person or video arraignment or initial appearance of prisoners is utilized.[6] Such areas require space in which judges or other court personnel can work. While the district attorney is obviously a vital component of the criminal justice system, the district attorney is also responsible for a wide variety of other legal functions,[7] and we conclude that offices of the district attorney are not an integral part of the "jail facilities." However, this does not end our analysis.
 II.
¶ 11 The Board of County Commissioners of each county must provide sufficient space in the county courthouse for the personnel and programs of the district attorney (19 O.S. 2001, §215.36[19-215.36](A)) and for other county offices, and must likewise provide space for a jail. Id. §§ 401, 401.1. County commissioners are authorized to levy taxes for the construction and repair of courthouses, jails and other necessary buildings, and make contracts on behalf of the county for such improvements.Id. §§ 731, 732. The designation and allocation of courthouse space for county officers and courtrooms are matters for the determination of the Board of County Commissioners. A.G. Opin. 73-231.
¶ 12 Whether excess space exists in the jail facility/courthouse annex, which should be leased or made available to other entities, and whether the district attorney is the most appropriate to use the space, are questions of fact which cannot be answered in an Attorney General's Opinion. 74O.S. 2001, § 18b[74-18b](A)(5).
¶ 13 Further, in the financing transaction, the jail facility/courthouse annex is leased to the county-beneficiary public trust.[8] Under the terms of the financing instruments, whether a part of the facilities (comprising excess space not presently needed for a jail) could be subleased back to the county or to a third party, is beyond the scope of this Opinion. Id.
¶ 14 Assuming a determination is made by the trustees of the public trust (whose membership includes each of the county commissioners and the sheriff)[9] that excess space exists in the jail facility which is not presently needed for jail functions, and the public interest is best served by making the excess space available for other use, several other restrictions would still apply. Arrangements for use of the space by persons or entities other than the county-beneficiary jail trust would: (1) require the approval of the public trust, and, depending on the terms of the financing instruments, approval of the note trustee or note holders; (2) require a written sublease or other appropriate instrument memorializing the sublease; and (3) be subject to termination and re-entry by the original lessee (i.e., the county trust) when it is determined the space is needed for jail purposes. See A.G. Opin. 76-261, at 285. Further, such a sublease must be supported by adequate consideration. Id.
¶ 15 If a county desires to have the space occupied by the district attorney or other county officers, the county must sublease such space from the public trust, and an appropriate payment should be made by the county to the public trust for the use of the space. This would presumably result in early retirement of the notes issued to finance the facility, since the trust would obtain the money in addition to the county sales tax. If the county commissioners find the district attorney (or the court or other county officers) should occupy the space without additional payment, thus retaining the current maturity of the financing, we opine this would result in a change in use of the county sales tax, and such change would have to be approved by voters in a second sales tax election. 68 O.S. Supp. 2003, §1370[68-1370].
 ¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Every resolution passed by a county levying a tax must specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose. Okla. Const. art. X, § 19. The term "purpose" is broadly used and is not synonymous with "project." Howard v. Crawford, 16 P.3d 473, 477 (Okla.Ct.App. 2000). A general statement as to the general purpose of the tax is required, and a reasonable measure of flexibility is allowed in a statement describing how tax proceeds will be spent, so long as the general purpose of the proposition approved by voters is achieved. Id.
 2. When a resolution calls a county sales tax election, and the ballot proposition for voter approval specifies the proceeds of the tax will be used for a "county jail facility," the purpose of the tax is interpreted as including a number of functions related to the custody and trial of prisoners or accused persons. 68 O.S. Supp. 2003, § 1370(E);[10] 19 O.S. 2001, §§ 401, 401.1, 731, 732; see Hartford Elect. Light Co. v. Fed. Power Comm'n, 131 F.2d 953, 961 (2d Cir. 1942).
 3. While a county has a duty to provide sufficient space in the county courthouse for the personnel and programs of the district attorney ( 19 O.S. 2001, § 215.36(A)), offices of the district attorney are not a part of a "jail facility." Id. §§ 401, 731; 68 O.S. Supp. 2003, § 1370(E).
 4. Whether space in a county courthouse annex built with county sales tax proceeds is not needed for jail functions, and whether such excess space may best be used for district attorney offices, involve questions of fact which cannot be addressed in an Attorney General Opinion. 74 O.S. 2001, § 18b(A)(5); see also Chicago, R.I. Pac. Ry. Co. v. Excise Bd., 29 P.2d 586 (Okla. 1934).
 5. Use of space by the county for non-jail purposes, in a "county jail facility" built and financed by, and leased to, a county-beneficiary public trust would require: (i) a determination by the public trust that excess space exists which is not currently needed for county jail purposes; (ii) compliance by the public trust with all requirements of financing documents for use or subleasing the facility; (iii) execution of a sublease between the public trust and the county for such excess space; (iv) payment by the county of adequate consideration for sublease of the space; and (v) such sublease for non-jail use of the property by the county must provide for termination and re-entry whenever the same is needed for county jail purposes. See A.G. Opin. 76-261. Further, if a change in use of sales tax proceeds financing the county jail facility is proposed, such change must be approved by the voters at an election held for that purpose. 68 O.S. Supp. 2003, § 1370(E). Whether such conditions are met involves questions of fact which cannot be addressed in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] Official County Absentee Ballot Special Election, Jan. 11, 2000, Sequoyah County, Oklahoma (photocopy on file in the Oklahoma Attorney General's office).
[2] Jail Constr., Maint. and Operation Sales Tax Res. (Jan. 11, 2000) (photocopy on file in the Oklahoma Attorney General's office).
[3] Note Purchase Agreement $3,060,000, Sequoyah County Criminal Justice Authority Revenue Notes, Series 2000 (May 25, 2000) (photocopy on file in the Oklahoma Attorney General's office). The five trustees of the public trust include the sheriff, the members of the county governing board (i.e., the Board of County Commissioners), and a county resident appointed by the county commissioners. See Trust Indenture Creating the Sequoyah County Criminal Justice Authority, at 1 (May 20, 2000) (photocopy on file in the Oklahoma Attorney General's office). The term of the lease is for the term of the note issued to finance the facility. Lease Agreement, art. II, Term (May 1, 2000). The "Title 60" public trust, so created, is not the same as a County Jail Trust Authority (see 19 O.S. 2001, §§904.1-904.10), having different powers and limitations. A county may, under proper circumstances, lease parts of county facilities to a public trust. See Morris v. City of Oklahoma City,299 P.2d 131, 132 (syllabus ¶ 1) (Okla. 1956); A.G. Opin. 76-261, at 285.
[4] The Legislature amended the Sales Tax Code in 2004, but those amendments are not germane here. See 2004 Okla. Sess. Laws ch. 5, § 75; 2004 Okla. Sess. Laws ch. 103, § 1.
[5] A county general obligation bond issue was not involved in the situation you describe, so it is not necessary to deal with the provisions of the Bond Issue Proceeds Act, which pertains to use of proceeds of general obligation bonds.
[6] Telephonic conferences between the author and deputies at the Oklahoma County and Tulsa County detention facilities, July 27, 2004.
[7] 19 O.S. 2001, §§ 215.4[19-215.4], 215.16.
[8] See Note Purchase Agreement $3,060,000, Sequoyah County Criminal Justice Authority Revenue Notes, Series 2000 (May 25, 2000) (photocopy on file in the Oklahoma Attorney General's office).
[9] See Trust Indenture Creating the Sequoyah County Criminal Justice Authority, at 1 (May 20, 2000) (photocopy on file in the Oklahoma Attorney General's office).
[10] The Legislature amended the Sales Tax Code in 2004, but those amendments are not germane here. See 2004 Okla. Sess. Laws ch. 5, § 75; 2004 Okla. Sess. Laws ch. 103, § 1.