OSCN Found Document:EDWARDS v. BOARD OF COUNTY COMMISSIONERS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 EDWARDS v. BOARD OF COUNTY COMMISSIONERS
2015 OK 58
Case Number: 113697
Decided: 09/22/2015
As Corrected: October 5, 2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 58, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

RANDALL EDWARDS, STANLEY A. WALLACE, JR., DONALD L. YOUNG, MORTIMER J. BICKERSTAFF, SANDRA BOHANNON, MARY K. HOLLINGSWORTH, KENT K. HOLLINGSWORTH, KENT K. MATHERS, and LINDA RAMEY, Plaintiffs/Appellees,
v.
THE BOARD OF COUNTY COMMISSIONERS OF CANADIAN COUNTY, OKLAHOMA by and through its Members DAVE ANDERSON, PHIL CARSON, and JACK STEWART, and DAVE ANDERSON, PHIL CARSON, and JACK STEWART individually, Defendants/Appellants.

ON APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY
HONORABLE ROGER H. STUART
DISTRICT JUDGE

¶0 Certain citizens and officers of Canadian County brought an action against the Board of County Commissioners of Canadian County for a declaratory judgment and writ of mandamus, as well as a temporary injunction, seeking to require the Board of County Commissioners of Canadian County to continue the funding of juvenile facilities and services in Canadian County using a .035% sales tax enacted by the voters of Canadian County in 1996. The trial court granted the plaintiffs' request for a temporary injunction and the defendants appealed.

ORDER OF THE TRIAL COURT IS AFFIRMED

Mark Henricksen, Lanita Henricksen, Henricksen & Henricksen Lawyers, Inc., Oklahoma City, OK, for Plaintiffs/Appellees.

Fenton Ramey, Fenton R. Ramey, Inc., Yukon, OK, for Plaintiffs/Appellees.

Heather R. Darby, James B. Robertson, Carol Price Dillingham, District 21 District Attorney's Office, Norman, OK, for Defendants/Appellants.

COMBS, V.C.J.: 

¶1 The question presented to this Court is whether the trial court committed reversible error when it issued a temporary injunction[1] ordering Defendants/Appellants to continue funding the services of the Canadian County Juvenile Justice Center from proceeds generated from a 1996 .035% sales tax (Tax). We hold that it did not.

FACTS AND PROCEDURAL HISTORY

¶2 This cause concerns a dispute between Defendants/Appellants The Board of County Commissioners of Canadian County, Oklahoma by and through its Members Dave Anderson, Phil Carson, and Jack Stewart, and Dave Anderson, Phil Carson and Jack Stewart individually (collectively "Board"), and certain citizens and officers of Canadian County, Plaintiffs/Appellees Randall Edwards, Stanley A. Wallace, Jr., Donald L. Young, Mortimer J. Bickerstaff, Sandra Bohannon, Mary K. Hollingsworth, Kent K. Hollingsworth, Kent K. Mathers and Linda Ramey ("Citizens"), over the legal usage of funds generated from a sales tax enacted by the voters of Canadian County in 1996. On August 27, 1996, the voters of Canadian County adopted the Tax in question through the following proposition that appeared on the ballot:

Proposition

The gist of the proclamation is:

Shall Resolution No. 96-21 of Canadian County, Oklahoma, entitled:

A resolution for providing for funds for Canadian County, Oklahoma; levying a .35 of one cent sales tax on the gross receipts or proceeds on certain sales for an unlimited period, such tax to be used for financing, construction and equipping of a juvenile delinquents detention facility and juvenile justice facilities in Canadian County, including design, construction, expenses, operations, equipment and furnishings; fixing an effective date; making provisions separable; and declaring an emergency.

Be approved?

Official Democratic Absentee Ballot, Primary Election, August 27, 1996, Canadian County, Oklahoma, Plaintiffs' Exhibit 4 and Defendants' Exhibit 2, Tab 8.

¶3 Two resolutions adopted by the Board preceded the public vote on the Tax. The first, Resolution No. 96-20, was adopted by the Board on May 28, 1996. In addition to detailed language governing the application of the Tax, Resolution No. 96-20 contained the following operative language:

[a] resolution providing for funds for Canadian County, Oklahoma; authorizing the calling of a sales tax election levying a .35 of one cent sales tax on the gross receipts or proceeds on certain sales for an unlimited period, such tax to be used for construction, financing and equipping of a juvenile delinquents detention facility and juvenile justice facilities in Canadian County, including design, construction, expenses, operations, equipment and furnishings; fixing an effective date; making provisions separable; and declaring an emergency.

Resolution No. 96-20, Plaintiffs' Exhibit 1 and Defendants' Exhibit 2, Tab 5.

¶4 On the same date, the Board also adopted Resolution No. 96-21, which authorized the calling of a special election and contains the proposition actually submitted to the voters of Canadian County. Resolution No. 96-21 contains similar language to that quoted above from Resolution No. 96-20, but without the phrase "authorizing the calling of a sales tax election":

[a] resolution providing for funds for Canadian County, Oklahoma; levying a .35 of one cent sales tax on the gross receipts or proceeds on certain sales for an unlimited period, such tax to be used for financing, construction and equipping of a juvenile delinquents detention facility and juvenile justice facilities in Canadian County, including design, construction, expenses, operations, equipment and furnishings; fixing an effective date; making provisions separable; and declaring an emergency.

Resolution No. 96-21, Plaintiffs' Exhibit 2 and Defendants' Exhibit 2, Tab 6.

¶5 The above-quoted language from Resolution No. 96-21 is the text that actually appeared on the ballot submitted to the voters of Canadian County, as shown by both the Election Proclamation, Plaintiffs' Exhibit 3 and Defendants' Exhibit 2, Tab 7, and the ballot itself, Plaintiffs' Exhibit 4 and Defendants' Exhibit 2, Tab 8. However, while Resolution No. 96-21 incorporates by reference Resolution No. 96-20, it also contains additional language that is not found in Resolution No. 96-20. Specifically, Section 3 of Resolution No. 96-21 provides, in pertinent part:

[t]hat by reason of said County being without adequate funds with which to furnish required public services, it is deemed and declared necessary for the preservation of the public peace, health and safety, that said election be held without delay.

¶6 Resolution No. 96-21 was approved by the voters of Canadian County on August 27, 1996. Since the enactment of the Tax, it is undisputed that the funds generated have been used exclusively for juvenile facilities and a variety of juvenile programs and services in Canadian County.[2]

¶7 In response to concerns raised over the legality of using funds generated by the Tax to pay for juvenile programs and services, in addition to the physical structures, an Attorney General Opinion was requested. The Attorney General issued an opinion concerning the matter on October 31, 2014, Question Submitted by: The Honorable Ron Justice, State Senator, District 23, 2014 OK AG 15(Opinion). The Attorney General examined Resolution No. 96-20 and determined that the language did not authorize use of the Tax for the funding of programs, salaries and expenses related to operation of the juvenile bureau, or even certain aspects of the physical facilities. Opinion, 2014 OK AG 15, ¶19.

¶8 In the wake of the Opinion, the Board ceased using the Tax for funding juvenile programs, services, and salaries deemed outside the purpose of the Tax by the Attorney General, and instead sought other funding sources for those items.[3] Citizens filed suit against the Board in the District Court of Canadian County on December 5, 2014, and filed an amended petition on December 8, 2015. Citizens sought declaratory relief, a temporary restraining order and temporary injunction pending a declaratory ruling, and a writ of mandamus by way of ancillary relief. The trial court held a hearing on Citizens' request for a temporary injunction on January 8, 2015.

¶9 In an order filed on January 28, 2015, the trial court granted Citizens' request for a temporary injunction. The trial court determined: 1) Citizens were likely to prevail in their request for a declaratory judgment; 2) the Board would not suffer irreparable harm if the temporary injunction was issued; and 3) Citizens would suffer irreparable harm if the temporary injunction was not issued. The Board appealed, and filed its Petition in Error on February 4, 2015. The parties filed a Joint Motion to Retain on April 10, 2015, which this Court granted on April 13, 2015. The cause was assigned to this office on July 10, 2015.

STANDARD OF REVIEW

¶10 The purpose of a temporary injunction is to preserve the status quo and prevent the perpetuation of a wrong or the doing of an act whereby the rights of the moving party may be materially invaded, injured, or endangered. Oklahoma Public Employees Ass'n v. Oklahoma Military Dept., 2014 OK 48, ¶15, 330 P.3d 497; Sharp v. 251st Street Landfill, Inc., 1991 OK 41, ¶21, 810 P.2d 1270 (overruled on other grounds by DuLaney v. Oklahoma State Dept. of Health, 1993 OK 113, 868 P.2d 676). A temporary injunction protects a court's ability to render a meaningful decision on merits of the controversy. Oklahoma Public Employees Ass'n, 2014 OK 48, ¶15; Sharp, 1991 OK 41, ¶21.

¶11 A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. Dowell v. Pletcher, 2013 OK 50, ¶5, 304 P.3d 457; Sharp v. 251st Street Landfill, Inc., 1996 OK 109, ¶4, 925 P.2d 546. Matters involving the granting or denial of injunctive relief are of equitable concern. Dowell, 2013 OK 50, ¶5; Brown ex rel. Brown v. Oklahoma Secondary School Activities Ass'n, 2005 OK 88, ¶11, 125 P.3d 1219. Accordingly, this Court will consider all evidence on appeal. Dowell v. Pletcher, 2013 OK 50, ¶5; Brown ex rel. Brown, 2005 OK 88, ¶11.

ANALYSIS

¶12 To obtain a temporary injunction, a plaintiff must show that four factors weigh in their favor: 1) the likelihood of success on the merits; 2) irreparable harm to the party seeking the relief if the injunction is denied; 3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest. Oklahoma Public Employees Ass'n v. Oklahoma Military Dept., 2014 OK 48, ¶9, 330 P.3d 497; Dowell v. Pletcher, 2013 OK 50, ¶7, 304 P.3d 457. The right to injunctive relief must be established by clear and convincing evidence and the nature of the injury must not be nominal, theoretical, or speculative. Dowell, 2013 OK 50, ¶7; Sharp v. 251st Street Landfill, Inc., 1996 OK 109, ¶5, 925 P.2d 546.

A. Likelihood of Success on the Merits

¶13 After a hearing and after examining the evidence, the trial court determined that Citizens were likely to prevail on the merits in their request for a declaratory judgment seeking to find the Opinion of the Attorney General invalid and not a legal basis for the Board to cease using proceeds from the Tax to fund the ongoing juvenile programs and services in Canadian County. On appeal, the Board argues that Citizens failed to meet their burden of proof because the Opinion of the Attorney General is correct and the use of funds from the sales tax for services and programs violates the law of the State of Oklahoma. Upon examination of the evidence, this Court determines the trial court's ruling was not an abuse of discretion or clearly against the weight of the evidence.

¶14 Okla. Const. art. 10, § 19 prohibits the use of a tax for anything other than its stated purpose, and provides:

[e]very act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.

This restriction on the use of taxes is echoed in 68 O.S. 2011 § 1370(E), which provides:

[a]ny sales tax which may be levied by a county shall be designated for a particular purpose. Such purposes may include, but are not limited to, projects owned by the state, any agency or instrumentality thereof, the county and/or any political subdivision located in whole or in part within such county, regional development, economic development, common education, general operations, capital improvements, county roads, weather modification or any other purpose deemed, by a majority vote of the county commissioners or as stated by initiative petition, to be necessary to promote safety, security and the general well-being of the people, including any authorized purpose pursuant to the Oklahoma Community Economic Development Pooled Finance Act. The county shall identify the purpose of the sales tax when it is presented to the voters pursuant to the provisions of subsection A of this section. Except as otherwise provided in this section and except as required by the Oklahoma Community Economic Development Pooled Finance Act, the proceeds of any sales tax levied by a county shall be deposited in the general revenue or sales tax revolving fund of the county and shall be used only for the purpose for which such sales tax was designated. If the proceeds of any sales tax levied by a county pursuant to this section are pledged for the purpose of retiring indebtedness incurred for the specific purpose for which the sales tax is imposed, the sales tax shall not be repealed until such time as the indebtedness is retired. However, in no event shall the life of the tax be extended beyond the duration approved by the voters of the county.

¶15 Citizens' injury--the Board's decision to cease funding juvenile programs and services with the Tax--is a direct result of an Opinion of the Oklahoma Attorney General, Question Submitted by: The Honorable Ron Justice, State Senator, District 23, 2014 OK AG 15. The Opinion examined the language of Resolution No. 96-20 in the context of Okla. Const. art. 10, § 19 and prior decisions of this Court. An Opinion of the Attorney General is binding on those officials affected by it. In Grand River Dam Authority v. State, this Court explained:

The basis rationale for this is that an official who has sought an opinion from the attorney general should, even though not compelled to do so by statute, follow the advice which is given to him. This duty extends only until the public official is relieved thereof by a court of competent jurisdiction or until this court holds otherwise than the attorney's general opinion.

1982 OK 60, ¶15, 645 P.2d 1011 (footnotes omitted). However, while a published Attorney General Opinion may be persuasive authority for a court, courts are not bound by the Opinion of the Attorney General. In Re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶15, 326 P.3d 496; Austin, Nichols & Co. v. Oklahoma County Bd. of Tax-Roll Corrections, 1978 OK 65, ¶15, 578 P.2d 1200.

¶16 The Attorney General Opinion focuses specifically on the meaning of certain terms contained in Resolution No. 96-20, including: 1) the precise meaning of the term "operations" in the context of a juvenile delinquents detention facility and juvenile justice facilities; and 2) the absence of the word "programs" in the title or statement of purpose of Resolution 96-20. After settling upon a narrow definition of "operations" that excludes even guards and janitors, and determining that the word "programs" was used nowhere, the Attorney General concluded that the sales tax proceeds:

shall only be used for the distinct and specific purpose of the financing, construction and equipping of a juvenile delinquents detention facility, and juvenile justice facilities, including design, construction, expenses, operations, equipment, and furnishings approved by the voters and set forth in the resolution.

Opinion, 2014 OK AG 15, ¶19.

It is unnecessary at this time for the Court to determine the precise meaning of "operations" in this context, as several more expansive factors weigh in favor of the trial court's determination that the Attorney General Opinion was too narrow in scope and erroneous as to the intent of the voters of Canadian County.

¶17 The clear weight of the evidence supports the trial court's decision to issue the temporary injunction because of Citizens' likelihood of success on the merits. First, as Citizens point out, Resolution No. 96-20 was not the Resolution containing the proposition submitted to the voters of Canadian County for the special election where they chose to adopt the sales tax. Resolution No. 96-21 set the language that eventually appeared on the ballot, and is the Resolution referenced on the ballot itself. As the Attorney General notes, the language used in the Resolution is important:

[y]our first three questions require an analysis of the stated purpose of the sales tax approved by the voters and set forth in Canadian County Commissioners' Resolution 96-20. The purpose of the Canadian County sales tax at issue is stated in both the resolution itself and the commissioners' statement of purpose which are quoted above.

Opinion, 2014 OK AG 15, ¶5.

Resolution No. 96-21, which was approved by the voters of Canadian County but apparently not considered by the Attorney General, contains additional language related to purpose, most notably:

[t]hat by reason of said County being without adequate funds with which to furnish required public services.

Resolution No. 96-21, Plaintiffs' Exhibit 2 and Defendants' Exhibit 2, Tab 6 (emphasis added.)

¶18 Second, the Opinion's definition of purpose within the meaning of Okla. Const. art. 10, § 19 is itself too narrow. The Opinion of the Attorney General upon which Board based its decision to cease using the Tax for juvenile services is not the first time the Office of the Attorney General has examined the application of Okla. Const. art. 10, § 19 and 68 O.S. § 1370, and is in fact a notable departure from its previous analysis. In Question Submitted by: The Honorable Richard L. Gray, Sequoyah County District Attorney, 2004 OK AG 32, the Attorney General correctly noted:

[t]he word "purpose" is used broadly in the constitution and in statutes requiring that the purpose of a tax must be stated. "Purpose" is not synonymous with a specific project. State ex rel. Howard v. Crawford, 16 P.3d 473, 477 (Okla. Ct.App.2000). Howard held no constitutional violation occurred when a school district, which had specified certain specific projects for use of school bond proceeds, used part of the proceeds for other school improvement projects. Id. at 478. While much of the opinion pertained to the construction of 62 O.S. 1991, § 572, the Bond Issue Proceeds Act, Howard cited Sublett v. City of Tulsa, 405 P.2d 185, 197 (Okla. 1965), and concluded "the Oklahoma Constitution is satisfied by a 'general statement of the purposes' of the bond issue." Howard, 16 P.3d at 477 (alteration in original). Thus, Howard stands for the proposition that a reasonable measure of flexibility is allowed in a statement describing how tax proceeds will be spent, as long as the general purpose of the proposition is approved by the voters.

Question Submitted by: The Honorable Richard L. Gray, Sequoyah County District Attorney, 2004 OK AG 32, ¶7 (footnotes omitted).

¶19 In the above quoted Opinion, the Attorney General was asked to consider whether an office for the district attorney could be placed in an area of the courthouse the construction of which was financed with proceeds of a county sales tax specifying that the tax was for a county jail facility. In making his determination, the Attorney General considered the meaning of the term "jail facility" and determined:

[t]he ballot proposition and the commissioners' resolution described the purpose of the sales tax as being used for a "jail facility." In this context, we must consider what a "jail facility" might include. Neither "jail" nor "facility" nor the term "jail facility" is defined in Oklahoma statutes. Therefore, we must rely on the ordinary meaning of the words. 25 O.S. 2001, § 1. Further, a singular word includes the plural. Id. § 25. "Jail" means "a building for the confinement of persons held in lawful custody." Webster's Third New International Dictionary 1208 (3d ed. 1993). The word "facility" embraces anything which aids or makes easier the performance of the activities involved in a course of conduct or the business of a person or corporation. Id. at 812; see also Hartford Elec. Light Co. v. Fed. Power Comm'n, 131 F.2d 953, 961 (2d Cir. 1942). Thus, we conclude a "jail facility" includes not only cells, but also offices for jailers and administrative staff, areas for bathing and sanitation, janitorial services, food preparation or serving, inmate exercise, space for inmates to consult with their attorneys, and other necessary functions.

Question Submitted by: The Honorable Richard L. Gray, Sequoyah County District Attorney, 2004 OK AG 32, ¶9 (emphasis added).

¶20 In addition to not considering extra language included in Resolution No. 96-21, the Attorney General Opinion at issue in this cause appears to use the phrase "design, construction, expenses, operations, equipment and furnishings" to artificially narrow the scope of what the voters approved when they adopted the tax to finance construction and equipping of "a juvenile delinquents detention facility and juvenile justice facilities." The trial court found this unpersuasive, and in doing so considered much evidence indicating that such a narrow interpretation was not the intent of the Board of County Commissioners at the time the Tax was proposed and was not the intent of the voters themselves when they adopted the Tax.

¶21 Finally, the record contains ample evidence that the Tax was presented to the voters of Canadian County as a way to finance not just the new juvenile detention center and its bed space, but as a means to provide alternative education to juvenile offenders and cover the cost of the complete package.[4] At the hearing on Citizens' motion for a temporary injunction, the trial court heard testimony from several public officials involved in the process of getting the Tax adopted.

¶22 Judge Gary Miller, who was responsible for the Canadian County juvenile justice system at one time, testified concerning his role in presenting the Resolution No. 96-21 tax proposal to the citizens of Canadian County. Transcript, pp.107-109. Judge Miller testified that the purpose of the Tax had always been not just buildings, but services and the people who provided them. Transcript, p. 109. Stanley A. Wallace was chairman of the Canadian County Public Facilities Authority at the time, and he provided additional testimony concerning the purpose of the Tax:

Q: Okay. Was it every your intention to limit yourself to the construction of a building?

A: Never. Building doesn't do anything unless you have programs available to present. And that would be our interpretation at the time that operations, as plural. We read and researched the resolutions, that operations being plural was our understanding.

Transcript, p. 54:19-25.

Attorney Mark Lea, who drafted Resolution No. 96-21 "for practical purposes," testified that it was intentionally drafted to supplement Resolution No. 96-20 because there were worries over the language of Resolution No. 96-20 not being broad enough to cover all intended purposes:

[w]ell, at the time my opinion was is that that we had not specifically enough provided for the payment of services, in plain talk, humans . we needed language that made it absolutely clear and apparent that humans could be paid and paid in programs that were not specifically yet listed.

Transcript, p. 102:2-10.

¶23 These are illustrative examples, but only a small part of testimony given at the hearing and reviewed by this Court; testimony which overwhelmingly supports the conclusion that the Tax was intended by its creators and proponents, and presented to the voters of Canadian County, to cover far more than the narrow reading imposed by the Attorney General's analysis of Resolution No. 96-20 on its own. Given the available evidence, it was not an abuse of discretion or against the weight of the evidence for the trial court to determine Citizens' possessed a likelihood of succeeding on the merits.

B. Citizens Would Suffer Irreparable Harm in the Absence of a Temporary Injunction

¶24 Citizens argued that they would suffer irreparable harm if the temporary injunction were denied because without use of the Tax, funds available to employ staff and continue key services of Canadian County juvenile facilities would quickly be exhausted, resulting in interruption of services and furloughs and/or layoffs. The Board argued that such claims were hypothetical, as the County had been successfully funding juvenile programs and services from sources other than the Tax since November 1, 2014, and there had yet to be any interruption in services or other harm. After examining the evidence, the trial court determined that Citizens would suffer irreparable harm if the injunction was not issued. We conclude the trial court's determination was not an abuse of discretion or clearly against the weight of the evidence.

¶25 At the hearing held on January 8, 2015, the Canadian County Clerk testified extensively concerning the financial situation of the County and availability of funds to continue operation of the juvenile programs in Canadian County. At the time of the hearing, the Clerk testified that the County would be unable to make payroll on February 5th from authorized sources other than the Tax:

Q: So based on current decisions of the Board of County Commissioners, will you be able to make payroll from the funding sources authorized as of February 5?

A: Not without additional funds being transferred into their account.

Transcript, p. 24:20-24.

The Clerk testified further that even diverting funding from other sources to juvenile programs and services would quickly result in the exhaustion of other funding sources, including the reserve fund. Transcript, pp. 29-30.

¶26 Associate District Judge Bob Hughey who handles the County's juvenile cases and is heavily involved in the day to day operation of the center, also testified at the hearing. His testimony in part addressed the certainty of layoffs if an injunction were not issued:

Q: Do you have concerns about the viability of the center?

A: Yes.

Q: What are they?

A: If we're not able to access the sales tax, we're going to have to start laying off employees, period.

Q: Why?

A: Right now our employees are earning pay that's going to be paid on February 5th, and we don't have the - we don't have the money to make that February 5th payroll.

Q: So if a temporary injunction is not issued this afternoon, what do you believe your legal obligation, vis-à-vis these employees is?

A: Yeah. I have a real problem incurring a debt for wage and salaries if we don't have the money to pay it. So our plan is if an injunction is not granted we're going to start talking tomorrow about what employees to lay off.

Transcript, 71:5-22.

¶27 Several things become evident from a detailed examination of the hearing testimony and other evidence: 1) since November 14, 2014, Canadian County had been providing funding for juvenile programs, services, and employees from sources other than the Tax; 2) regardless of the Board's intent, available alternate funds would run out quickly after the hearing if a temporary injunction were not issued; 3) the Board hoped that an election scheduled for February 10, 2015, where voters were asked to approve new purposes for the Tax would solve the funding issue.

¶28 The Board's primary argument concerning irreparable harm at the hearing centered on the proposition that irreparable harm had not yet occurred. They argued that money had been diverted from other sources to ensure the continued funding of services and programs. What Citizens were required to prove, however, was not whether irreparable harm had already occurred, but whether it would occur in the absence of a temporary injunction.

¶29 Injury is irreparable when it is incapable of being fully compensated for in damages or where the measure of damages is so speculative that it would be difficult if not impossible to correctly arrive at the amount of the damages. Hines v. Independent School Dist. No. 50, Grant County, 1963 OK 85, ¶14, 380 P.2d 943. Even if the harm that juvenile justice employees might have suffered due to a funding cutoff might be measureable in monetary damages, the harm to Appellees as citizens of Canadian County caused by an interruption of juvenile services and programs throughout the county could not be. It was not an abuse of discretion or clearly against the weight of the evidence for the trial court to determine that Citizens would suffer irreparable harm if a temporary injunction were not issued requiring Board to continue using the tax to fund juvenile programs and services in Canadian County.

C. Harm to Citizens Outweighs Any Potential Harm to the Board 

¶30 In order for a temporary injunction to be proper, the threatened injury to the moving party must also outweigh the injury the opposing party will suffer under the injunction. Oklahoma Public Employees Ass'n v. Oklahoma Military Dept., 2014 OK 48, ¶9, 330 P.3d 497; Dowell v. Pletcher, 2013 OK 50, ¶7, 304 P.3d 457. In this cause, trial court weighed the relative injury and determined specifically that the Board would not suffer irreparable harm if a temporary injunction were issued.

¶31 The trial court correctly determined that any harm to the Board created by issuing a temporary injunction would be negligible. The effect of the injunction is to require the Board to continue using the Tax to fund the juvenile programs, services, and facilities in Canadian County in effectively the same manner they have been funded since the Tax was enacted in 1996, up until November of 2014 and the issuance of the Attorney General Opinion.

¶32 At the hearing on the injunction, the Board disputed the irreparable nature of the harm to Appellees, but effectively admitted that any fears of the Board being held liable for the illegal expenditure of public funds were not a real concern:

The Court: But in any event, I see no irreparable harm to the defendants if they're able to utilize the same funding stream that they've been utilizing since 1996. Apparently nobody believes that there's going to be any liability on that. And certainly since the Court issues an injunction, any liability they might have is tempered by my injunction. Correct, Mr. Robertson?

Mr. Robertson: Well, I disagree with the Court's analysis of is there irreparable harm to the defendant.

The Court: No, no, no. I'm just talking about, I'm addressing your client's concern that the Attorney General's Opinion has caused them, that they might be doing something illegal.

Mr. Robertson: Well, sure.

Transcript, p. 132:2-16

On review, the clear weight of the evidence supports the trial court's determination that the irreparable harm Citizens would suffer if a temporary injunction were not issued outweighed any potential harm to the Board the temporary injunction might have caused.

D. The Temporary Injunction is in the Public Interest

¶33 The Board argues on appeal that the injunction is not in the public interest. Public interest, the board argues, is best served by expending tax dollars in a legal and fiscally responsible manner. This argument is tied directly to the Board's arguments on the merits: 1) that the law requires taxes be used only for their stated purpose; and 2) the Attorney General correctly determined the purpose of the Tax did not include funding of juvenile programs and services.

¶34 The purpose of a temporary injunction, however, is to maintain the status quo until a final decision on the merits can be reached. Smith v. State ex rel. Bd. of Regents of Oklahoma State University, 1993 OK 1, ¶7, 846 P.2d 370. The temporary injunction is not itself a decision on the merits. Smith, 1993 OK 1, ¶7. Based upon the evidence, the public interest was best served by issuing a temporary injunction that would allow all juvenile programs and services in Canadian County to be funded by the Tax, as they had been from 1996 through November 2014, until the court could make a final decision on the merits.

¶35 Citizens demonstrated by clear and convincing evidence that the trial court's failure to issue a temporary injunction would almost certainly result in a state of financial emergency for the county and the eventual disruption of juvenile programs and services county-wide. The Board's refutation is simply that they might be engaged in an illegal expenditure of public funds that violates the public policy of the State of Oklahoma. Whether that is the case, however, is tied directly to the merits of the underlying suit, and the public interest is best served by preserving the status quo in this instance until the merits are determined.

CONCLUSION

¶36 Citizens challenged the decision of the Board to cease funding certain programs and services of the Canadian County Juvenile Justice Center from proceeds generated by a .035% sales tax enacted in 1996 based on an opinion issued by the Attorney General of Oklahoma. Citizens sought, and were granted, a temporary injunction by the trial court requiring the Board to continue funding the services of the Canadian County Juvenile Justice Center from proceeds generated from the 1996 .035% sales tax unless said tax is modified by vote of the citizens of Canadian County or further order of the court.

¶37 The Board appealed, arguing that Plaintiffs failed to meet their burden of proof for a temporary injunction. After examining the available evidence, it is the determination of this Court that the trial court's issuance of a temporary injunction was not an abuse of discretion or against the clear weight of the evidence. Oklahoma Public Employees Ass'n v. Oklahoma Military Dept., 2014 OK 48, ¶15, 330 P.3d 497; Dowell v. Pletcher, 2013 OK 50, ¶5, 304 P.3d 457. Accordingly, the order of the trial court granting a temporary injunction is affirmed.

ORDER OF THE TRIAL COURT IS AFFIRMED

ALL JUSTICES CONCUR 

FOOTNOTES

[1] "An 'interim', 'preliminary', 'temporary' or 'interlocutory' injunction are synonymous adjectives for relief pendent lite that generally leaves the parties in statu quo until the merits have been decided." Smith v. State ex rel. Bd. of Regents of Oklahoma State University, 1993 OK 1, n. 1, 846 P.2d 370 (citing Glasco v. School Dist. No. 22, 1909 OK 168, 103 P. 687).

[2] In a special election held on April 5, 2011, the voters of Canadian County were asked to approve a proposition that would have allowed .10% of the .35% sales tax to be used for the purpose of acquiring, constructing, renovating, equipping, furnishing, and operating county jail facilities. Official County Absentee Ballot, Special Election, April 5, 2011, Plaintiffs' Exhibit 9. The voters did not approve this proposition. Transcript, p. 77.

[3] The Board authorized the calling and holding of a second special election for February 10, 2015, that would have altered the purpose of the Tax to allow all previously collected funds and most future funds to be used for salaries and services. Resolution No. 14-606, Plaintiffs' Exhibit 25. However, the proposition would also have allowed all funds previously collected and 14% of funds collected in the future to be used for expenses related to the capitol improvement needs of the county. Resolution No. 14-606, Plaintiffs' Exhibit 25.

Citizens argue the Board is attempting to use the Attorney General Opinion to force the voters of Canadian County to accept a diversion of the sales tax revenue away from juvenile justice, a change the voters had previously rejected in 2011. See note 2, supra. This Court has no opinion on the Board's motive for proposing other uses for the Tax, as the question before us is strictly the propriety of the temporary injunction granted by the trial court.

[4] Plaintiffs' Exhibits 26-29 are a series of newspaper articles from the El Reno Tribune discussing the proposed Tax and its purposes prior to the vote, the majority of which specifically discuss alternative education for youthful offenders in addition to simple detention.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2000 OK CIV APP 142, 16 P.3d 473, 72 OBJ 180, HOWARD v. CRAWFORD
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 41, 810 P.2d 1270, 62 OBJ 1299, Sharp v. 251st Street Landfill, Inc.
Discussed at Length
 1993 OK 1, 846 P.2d 370, 64 OBJ 144, Smith v. State ex rel. Bd. of Regents of Oklahoma State University
Discussed at Length
 1993 OK 113, 868 P.2d 676, 4 OBJ 2845, DuLaney v. Oklahoma State Dept. of Health
Discussed
 1909 OK 168, 103 P. 687, 24 Okla. 236, GLASCO v. SCHOOL DIST. No. 22
Discussed
 1963 OK 85, 380 P.2d 943, HINES v. INDEPENDENT SCH. DIST. NO. 50, GRANT COUNTY
Discussed
 1965 OK 78, 405 P.2d 185, SUBLETT v. CITY OF TULSA
Cited
 2005 OK 88, 125 P.3d 1219, BROWN v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed at Length
 1996 OK 109, 925 P.2d 546, 67 OBJ 2930, Sharp v. 251st Street Landfill, Inc.
Discussed at Length
 2013 OK 50, 304 P.3d 457, DOWELL v. PLETCHER
Discussed at Length
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 2014 OK 48, 330 P.3d 497, OKLAHOMA PUBLIC EMPLOYEES ASSOC. v. OKLAHOMA MILITARY DEPT.
Discussed at Length
 1978 OK 65, 578 P.2d 1200, AUSTIN, NICHOLS & CO. v. OKLAHOMA COUNTY BD. OF TAX-ROLL CORRECTIONS
Discussed
 1982 OK 60, 645 P.2d 1011, Grand River Dam Authority v. State
Discussed
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 1, Meaning of Words
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 572, Purpose
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 1370, Tax on Gross Receipts from Sales or Services in County - Exemptions - Purpose - Duration - Creation of County Sales Tax Revolving Fund
Discussed